FILED

ORDERED PUBLISHED

JUL 25 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   ID-11-1389-MkHJu |
| ANDY N. SALGADO-NAVA, | Bk. No.   09-41646 |
| Debtor. | |
| R. SAM HOPKINS, Chapter 7 Trustee, | |
| Appellant, | |
| v. | **O P I N I O N** |
| ASSET ACCEPTANCE LLC; RECOVERY MANAGEMENT SYSTEMS CORP.; BONNEVILLE BILLING & COLLECTIONS; NCO PORTFOLIO MANAGEMENT; EASTERN IDAHO RMC; SPRINT NEXTEL CORRESPONDENCE; AMERICAN INFOSOURCE LP, | |
| Appellees.* | |

Argued and Submitted on June 14, 2012
at Boise, Idaho

Filed - July 25, 2012

Appeal From The United States Bankruptcy Court
for the District of Idaho

---

*Appellant named all unsecured creditors who filed proofs of claim in the debtor's bankruptcy case as appellees. While none of them actively participated in the bankruptcy court proceedings leading up to this appeal or in the appeal itself, naming them as appellees was not inappropriate because each of them might be affected by the relief appellant seeks on appeal. See generally Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo), 408 B.R. 280, 298-99 (9th Cir. BAP 2009) (discussing criteria for appellee standing).

Honorable Jim D. Pappas, Bankruptcy Judge, Presiding

Appearances:    Monte Gray of the Gray Law Offices, PLLC argued
                for appellant R. Sam Hopkins, chapter 7 trustee;
                Ronald R. Peterson of Jenner & Block LLP argued
                for amici curiae Jeremy Gugino and the National
                Association of Bankruptcy Trustees; and
                Cameron M. Gulden argued for amicus curiae the
                Office of the United States Trustee.

Before:  MARKELL, HOLLOWELL and JURY, Bankruptcy Judges.

MARKELL, Bankruptcy Judge:

## INTRODUCTION

R. Sam Hopkins ("Hopkins") sought $1,315.41 in fees for his service as a chapter 7[1] bankruptcy trustee. He based his request on the trustee compensation rates set forth in § 326(a). The bankruptcy court, however, found that the reasonable value of his services only amounted to $750 and limited Hopkins's fees to that amount.

We REVERSE the bankruptcy court's fee award and REMAND with instructions to enter a fee award of $1,315.41, the full amount Hopkins requested.

## FACTS

Andy N. Salgado-Nava ("Salgado-Nava") commenced his voluntary chapter 7 bankruptcy case by filing his bankruptcy petition on October 22, 2009. Hopkins was then appointed to

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

serve as trustee for Salgado-Nava's chapter 7 bankruptcy estate.

Hopkins initially determined that there were no non-exempt assets to distribute to creditors. He thus categorized Salgado-Nava's case, in line with most chapter 7 cases, as a no-asset case.[2] Hopkins had reached his decision after performing a number of tasks, including reviewing Salgado's schedules, his statement of financial affairs, his tax returns, and his responses to Hopkins's examination questions at the first meeting of creditors held pursuant to § 341(a). Because of Hopkins's no-asset determination, creditors and other parties in interest were told in January 2010 not to file proofs of claim in the case. See Rule 2002(e). Hopkins's only income expectation was a small $60 fee.[3]

---

[2]Approximately 90% of all chapter 7 cases are classified as no-asset cases. LOIS R. LUPICA, THE CONSUMER BANKRUPTCY FEE STUDY FINAL REPORT 47 (2011), available at http://bapcpafeestudy.com/tag/final-report/ (last visited July 20, 2012) (finding 89.4% of chapter 7 cases after the 2005 Bankruptcy Code amendments are no-asset cases); see also W. Clarkson McDow, Jr., Protecting the Integrity of the Bankruptcy System in Chapter 7 No-Asset Cases, NABTALK (Fall 2001), available at http://www.justice.gov/ust/eo/public_affairs/articles/docs/nabtalkfall2001.htm (last visited July 20, 2012) (estimating approximately 96% of chapter 7 cases were no-asset cases).
That no-asset cases are all-too-common is underscored by Rule 2002(e), which allows trustees and clerks generally to tell creditors to dispense with filing proofs of claim unless the creditors are later notified that there will be assets to disburse.

[3]In a no-asset case such as Salgado-Nava's, Hopkins and all other trustees receive only a $60 fee, regardless of how much work is undertaken. § 330(b)(1) & (2). This amount has not changed since 1994, and Congress has not made this amount subject to the Code's provision indexing various amounts for inflation.
(continued...)

3

But Hopkins had also sent routine notices to various taxing authorities, including the State of Idaho. These notices told of Salgado-Nava's bankruptcy filing. They also requested that the recipients advise Hopkins of any tax refunds owed to Salgado-Nava, as Hopkins claimed that such refunds were property of the bankruptcy estate under § 541.

These notices brought results. As it turned out, Salgado-Nava had overpaid his state taxes for 2009 and 2010 by approximately $10,000. In compliance with the notices, Idaho sent Hopkins Salgado-Nava's tax refunds. Hopkins then withdrew his no-asset report. He also issued a new notice advising creditors that there might be a distribution of assets and directing them to file proofs of claim in order to share in that distribution. Seven creditors, appellees here, did so.

After Hopkins received the tax refunds, Salgado-Nava amended his bankruptcy schedules to list the tax refunds as assets and to claim $4,160 of his 2009 refund as exempt. No one contested Salgado-Nava's exemption claim. As a consequence, the exemption was deemed allowed pursuant to § 522(l) and Rule 4003(b). Part of his 2010 refund also was excluded from the estate.[4]

When all was said and done, Hopkins collected $11,099 in assets. He paid $5,445 to Salgado-Nava in respect of his allowed exemptions, which left $5,654 available to pay creditor dividends

---

[3](...continued)
See § 104.

[4]Hopkins paid Salgado-Nava $1,285 of the 2010 refund because he determined that it had accrued postpetition, and thus was not property of the estate as it related to postpetition service income. See § 541(a)(6).

and Hopkins's chapter 7 trustee fees and expenses. Based on the trustee compensation rates set forth in § 326(a),[5] Hopkins filed a request in March 2011, along with his Final Report, asking the bankruptcy court to award him fees in the amount of $1,315.41, plus actual expenses of $46.10.[6]

Before hearing the matter, the bankruptcy court requested Hopkins provide additional information. Specifically, the court requested Hopkins file:

> a sworn affidavit in support of his requested compensation and expenses which includes an itemization setting for[th] the date and time spent providing all services rendered by Trustee for which he seeks compensation, together with a narrative discussion or explanation of any other information he wishes the Court to consider in support of his application.

Order to Trustee to File Supplementation of Record (April 12, 2011) at p. 1.

In response, Hopkins filed a one-page document entitled "Supplement to Trustee Fee Application," which provided a brief narrative summary of the services that Hopkins had provided in

---

[5]Those rates are based on amounts disbursed or turned over by the trustee to parties in interest other than the debtor according to the following schedule: 25% of the first $5,000 or less; 10% for amounts in excess of $5,000 but not in excess of $50,000; 5% for amounts in excess of $50,000 but not in excess of $1,000,000; and 3% for amounts in excess of $1,000,000. See § 326(a).

[6]The Idaho district court had jurisdiction over the fee request as a matter "arising under" title 11, 28 U.S.C. § 1334(b), and then referred to the bankruptcy court from the district court under the district court's general order of reference permitted by 28 U.S.C. § 157(a). THIRD AMENDED GENERAL ORDER NO. 38 (D. Idaho April 24, 1995). The fee request was a core matter under 28 U.S.C. § 157(b)(2)(A), and thus the bankruptcy court could hear and determine the matter under 28 U.S.C. § 157(b)(1).

5

the bankruptcy case. It also summarized the results of those services: Hopkins had cash on hand which he estimated would be sufficient, after the payment of his requested trustee's fees, to pay $4,292 to unsecured creditors who had filed proofs of claim. This would result in a 39% dividend to creditors.

The Trustee also filed time records detailing the amount of time and services he and his staff had performed in the bankruptcy case. According to Hopkins, he and his staff spent approximately 14 hours on the case: Hopkins personally spent 3 hours, his bankruptcy administrator spent 6 hours, his office clerk spent 1 hour, and his paralegals accounted for the final 4 hours.

After the hearing, the bankruptcy court issued a memorandum decision awarding Hopkins only $750 of the $1,315.41 in fees requested. Relying on In re B & B Autotransfusion Servs., Inc., 443 B.R. 543 (Bankr. D. Idaho 2011), and on the other cases cited in B & B, the court held that $750 was a reasonable fee for Hopkins's services. According to the court, based on its consideration of the extent and difficulty of the services Hopkins and his paralegals had provided, the requested fees were unreasonable. In making this determination, the court reasoned:

> The only assets requiring administration by Trustee in this case were Debtor's tax refunds. Trustee has not shown that any significant efforts on his part were required to secure the refunds from Debtor; apparently, Debtor surrendered them to Trustee promptly. Beyond accepting and holding the tax refunds, Trustee was required to perform only routine, simple administrative tasks in this case. While all of those services are compensable (i.e., actual and necessary), they required no special skills or expertise, and required no significant amounts of time to complete. Indeed, most of those services were not performed personally by Trustee at all, but, instead, were provided by

6

> Trustee's support staff of "paralegals" and others. . . . When the Court focuses upon only those services of Trustee and his paralegals, and assigns appropriate reasonable value to those services, the requested fee is not a reasonable one.

Mem. Dec. (June 23, 2011) at pp. 3-4 (footnote omitted).

In addition, the bankruptcy court rejected Hopkins's argument that, under § 330(a)(7), he should receive $1,315.41 in fees as a commission based on the compensation rates set forth in § 326(a). As the court put it, § 326(a) in essence "caps" trustee compensation but does not alter or limit the court's duty and authority to determine a reasonable fee.

On June 30, 2011, the bankruptcy court entered its order approving Hopkins's Final Report and awarding Hopkins $750 in fees and $46.10 in expenses. The Trustee timely filed a notice of appeal on July 13, 2011, which gave us jurisdiction under 28 U.S.C. § 158(b).

## DISCUSSION

### A. Standard of Review

Although this Panel reviews a bankruptcy court's fee award pursuant to § 330(a) for abuse of discretion, Ferrette & Slater v. U.S. Trustee (In re Garcia), 335 B.R. 717, 723 (9th Cir. BAP 2005), we still must "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And that is the issue here: what is the "correct legal rule" set forth in § 330(a)(7)?

### B. Interpreting § 330(a)(7)

We start with the paragraph's provenance. Congress added § 330(a)(7) when it adopted § 407 of the Bankruptcy Abuse

7

Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, § 407, 119 Stat. 23, 106 (2005) ("BAPCPA"). To determine what this new paragraph means and what it added, we begin with the text of the statute itself. Ransom v. FIA Card Servs., N.A., --- U.S. ----, 131 S. Ct. 716, 723-24, 178 L. Ed. 2d 603 (2011) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989)).

Section 330(a)(7) provides:

> In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

Somewhat surprisingly, the published decisions construing this paragraph conclude that it added little to the law of trustee compensation. These decisions rest primarily on the view that trustee compensation is always subject to a review for reasonableness. See, e.g., In re B & B Autotransfusion Servs., Inc., 443 B.R. 543, 550 (Bankr. D. Idaho 2011); In re Healy, 440 B.R. 834, 835-36 (Bankr. D. Idaho 2010); In re Ward, 418 B.R. 667, 675-78 (W.D. Pa. 2009); In re Coyote Ranch Contractors, LLC, 400 B.R. 84, 94-95 (Bankr. N.D. Tex. 2009); In re McKinney, 383 B.R. 490, 493-94 (Bankr. N.D. Cal. 2008); In re Phillips, 392 B.R. 378, 389-90 (Bankr. N.D. Ill. 2008) In re Mack Props., Inc., 381 B.R. 793, 799 (Bankr. M.D. Fla. 2007); In re Clemens, 349 B.R. 725, 729-31 (Bankr. D. Utah 2006).

There is, however, an alternate view of § 330(a)(7). This view, adopted by the Office of the United States Trustee,[7]

---

[7]Trustee Compensation, in FREQUENTLY ASKED QUESTIONS (FAQs) FOR TRUSTEES (2006), available at

(continued...)

8

focuses on § 330(a)(7)'s terms – particularly the use of the term "commission" – which seem to alter the court's role in reviewing trustee compensation. See Kenneth N. Klee & Brendt C. Butler, The Bankrutpcy Abuse Prevention and Consumer Protection Act of 2005 – Business Bankruptcy Amendments, 28 CAL. BANKR. J. 270, 336 (2006) (stating that § 330(a)(7) is "supposed to ensure that the court will award compensation to a trustee on a commission basis using the upper limit in section 326 as a standard"); see also Tally M. Wiener & Nicholas B. Malito, On the Nature of the Chapter 7 Bankruptcy Trustee Fee, 18 NORTON J. BANKR. L. & PRAC. No. 2, Art. 3 (2009) ("The nature of the Chapter 7 trustee fee under the revised Bankruptcy Code is that it is a commission. It makes sense from a policy perspective to award Chapter 7 trustees commission-based awards because this method of compensation focuses on results achieved."); Samuel K. Crocker & Robert H. Waldschmidt, Impact of the 2005 Bankruptcy Amendments on Chapter 7 Trustees, 79 AM. BANKR. L.J. 333, 364 (2005) (stating that § 330(a)(7) "appears to overrule the circuit court decisions which have computed trustee compensation pursuant to the lodestar method, adjusted by enhancing factors such as the complexity of the case and extraordinary results.").

### 1. Parsing § 330(a)(7)

It is against this background of published cases, administrative commentary, and academic opinion that we interpret § 330(a)(7). On its face, § 330(a)(7) is made up of an

---

[7](...continued)
http://www.justice.gov/ust/eo/bapcpa/trustees_faqs.htm#trust_issue4
(last visited July 20, 2012).

9

introductory dependent clause – "In determining the amount of reasonable compensation to be awarded to a trustee" – followed by an independent clause – "the court shall treat such compensation as a commission, based on section 326." In reading this statutory directive, we think the most natural reading of this provision is that the independent clause states a mandatory rule, while the dependent clause states when that rule applies.

### a. The Commission Clause

If this reading is accepted, it means that we should start with the independent clause – which we will call the commission clause. On its face, this clause requires bankruptcy courts to treat a trustee's fee request as if the trustee were requesting payment of a commission – a fixed amount – based on the rates set forth in § 326. If correct, this reading would change our prior view that § 326 simply "capped" trustee compensation by setting forth maximum compensation rates. See Arnold v. Gill (In re Arnold), 252 B.R. 778, 788 n.12 (9th Cir. BAP 2000).

This change is warranted. Congress's addition of the commission clause changed both the function of § 326 and its relationship with § 330(a). The amendment fixed a statutory commission for chapter 7 trustees tied to – or, in the language of the last provision of the commission clause, "based on" – § 326's compensation scheme.

No other reading of the phrase "based on section 326" seems plausible, especially given the use of the word "commission." If Congress did not want to link a trustee's commission to the rates set forth in § 326, it could have ended the commission clause after the word "commission;" that is, it could have omitted the

10

phrase "based on section 326." Or it could have created a new and separate list of commission rates. Moreover, if Congress had merely meant to reiterate in § 330(a)(7) that a trustee's commission was subject to the caps set forth in § 326, it could have used the phrase "subject to section 326." For an example of how that phrasing would work, one only has to look at § 330(a)(1) ("subject to section[] 326, . . . the court may award . . .").

But Congress chose to use different words to refer to § 326 in §§ 330(a)(1) and (a)(7). The use of different words presumably means that Congress intended that the different words had different meanings and effects. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004). Put another way, standard canons of statutory interpretation require us to give "based on section 326" a different interpretation from one we would give if the phrase read, as its cognate phrase in § 330(a)(1) does, "subject to section 326." In short, we follow established precedent by giving each word and provision of the commission clause meaning. See Corley v. United States, 556 U.S. 303, 314 (2009) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . ." (internal quotation marks omitted)); see also Meyer v. Renteria (In re Renteria), 470 B.R. 838, 843 (9th Cir. BAP 2012) (interpreting § 1322(b)(1) so as to give effect to all of the words and phrases in the statute).

That said, we need to examine the remainder of the commission clause, including the relationship the phrase "based on" has to the word "commission" and, in turn, the meaning of the word "commission." One key indicator of the substantive

11

relationship among these terms and phrases is indicated by the spatial relationship of each in the statute's text. The words "based on" follow the main portion of the commission clause, a placement and ordering which generally means that the former limits, qualifies or refines the meaning of the latter. See In re Renteria, 470 B.R. at 842 (citing 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 47.33 (7th ed. 2011) (explaining the rule of the last antecedent). In short, the use of "commission" before the words "based on" indicates that the normal meaning of commission starts the analysis of the main text, with the addition of "based on section 326" indicating a refinement or limitation of that accepted meaning.

Turning to the accepted meaning of "commission" in normal parlance, a "commission" is a form of compensation set as a fixed percentage of what is sold or transferred. See BLACK'S LAW DICTIONARY 306 (9th ed. 2009) (defining commission as "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction <a real-estate agent's commission>."); OXFORD ENGLISH DICTIONARY (2d ed. 1989), available at http://www.oed.com/view/Entry/37135 (last visited July 20, 2012) (defining commission as "[a] remuneration for services or work done as agent, in the form of a percentage on the amount involved in the transactions; a pro rata remuneration to an agent or factor.").

Outside of bankruptcy, commissions generally are not subject to a review for reasonableness unless an agreed-upon commission rate is not duly fixed before the commission is earned. As

12

stated in the Restatement (Third) of Agency:

> The amount of compensation due may be determined by the terms of agreement between principal and agent and may be fixed in amount or made contingent on whether the agent achieves stated outcomes or on other criteria. . . . If an agent has a right to be paid compensation by a principal but the amount due cannot be determined on the basis of the terms of the parties' agreement, the agent is entitled to the value of the services provided by the agent.

RESTATEMENT (THIRD) OF AGENCY § 8.13, Comment d (2006).[8]

Much the same analysis applies in bankruptcy when, for example, a court pre-approves a professional's percentage-based fee or a contingency fee arrangement before the work is performed. See § 328. If the fee arrangement is properly authorized under § 328, the bankruptcy court does not conduct a standard § 330(a) reasonableness review of contingency fees or percentage-based fees it has pre-approved under § 328. See Friedman Enters. v. B.U.M. Int'l, Inc. (In re B.U.M. Int'l, Inc.), 229 F.3d 824, 829 (9th Cir. 2000) (citing Pitrat v. Reimers (In re Reimers), 972 F.2d 1127, 1128 (9th Cir. 1992)); see also In re Confections by Sandra, Inc., 83 B.R. 729, 731-32 (9th Cir. BAP 1987). Indeed, a bankruptcy court only can disturb such pre-approved fees when it finds that the pre-approval of such fees turned out to be "improvident in light of developments not capable of being anticipated at the time" the court fixed the fees. § 328(a); see also In re Reimers, 972 F.2d at 1128.

---

[8]This concept is not new to the law of agency. Both the Restatement (Second) of Agency and the initial Restatement of Agency articulate the same concept and reference cases and annotations reflecting the existence of this concept. See RESTATEMENT (SECOND) OF AGENCY § 443 (1958) and accompanying comments, annotations and cases; RESTATEMENT OF AGENCY § 443 (1933) and accompanying comments, annotations and cases.

13

As a result of this analysis, the plain language of the commission clause leads us to conclude that § 330(a)(7) sets commissions for bankruptcy trustees based on the rates set forth in § 326. Given this, if the commission clause stood alone, independent of the rest of § 330, we could immediately hold that trustee fees should not be disturbed absent circumstances like those required in order to disturb fees pre-approved under § 328, or like the circumstances that might justify reformation or rescission of a commission agreement outside of bankruptcy.

### b. Section 330(a)(7)'s Dependent Clause

But the commission clause does not stand alone. We still must construe the remainder of § 330(a)(7), because ascertaining the plain meaning of statutory text requires a contextual reading. State Comp. Ins. Fund v. Zamora (In re Silverman), 616 F.3d 1001, 1006 (9th Cir. 2010) ("To determine plain language we consider the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." (internal quotation marks omitted)); Carpenters Health & Welfare Trust Funds for Cal. v. Robertson (In re Rufener Constr., Inc.), 53 F.3d 1064, 1067 (9th Cir. 1995) ("When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole.")

This requires us to look at the dependent clause that immediately precedes the commission clause. Its wording and placement suggests that bankruptcy courts still must consider the reasonableness of trustee fees because it specifies that

14

bankruptcy courts must apply the commission clause "in determining the amount of reasonable compensation to be awarded to a trustee . . . ." We should not ignore the contents of this dependent clause any more than we should ignore the contents of the commission clause itself.[9]

The starting place for a reasonableness analysis component of trustee compensation might be § 330(a)(3). Before BAPCPA's enactment in 2005, § 330(a)(3) required bankruptcy courts, when considering the reasonableness of <u>all</u> trustee fees under <u>all</u> relevant chapters, including chapters 7, 11, 12, and 13, to consider:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

BAPCPA changed this. It amended § 330(a)(3) so that the only types of trustees that come within its ambit are chapter 11 trustees; chapter 7 trustees no longer are subject to its terms. BAPCPA, Pub. L. 109-8, § 407, 119 Stat. 23, 106 (2005). As a

---

[9]Nor can we ignore the language in § 326 and elsewhere in § 330(a) indicating that bankruptcy courts are authorized to award trustee fees only to the extent those fees are reasonable.

15

consequence, the factors of reasonableness specified in paragraph (3) no longer directly apply to chapter 7 trustees such as Hopkins when reviewing their fee requests.

Section 330(a)(7), however, applies to all trustees under all chapters. This indicates a shift in treatment and analysis of chapter 7 trustee fees from paragraph (3) and its catalogue of factors, to paragraph (7) and its explicit incorporation of commission rates.

But the shift was not complete. Notwithstanding the applicability of paragraph (7) to chapter 11 trustees, they are still specifically included in paragraph (3) with its litany of reasonableness factors. As a result, we cannot construe paragraph (7) to require a fixed commission in all cases regardless of chapter. Otherwise, we would create an absurd situation in which § 330(a)(3) requires what § 330(a)(7) prohibits.

This requires us to search for an interpretation of the § 330(a)(7) that harmonizes the various provisions. See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 661-66 (2007); Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249 (1985). In this endeavor, it is not our role to pick and choose between statutory provisions and only give effect to some of them. See Nigg v. U.S. Postal Serv., 555 F.3d 781, 785-86 (9th Cir. 2009) (citing Morton v. Mancari, 417 U.S. 535, 551 (1974)).[10]

_____

[10]If either provision had to give way, it would be § 330(a)(3). As later enacted and more specific, § 330(a)(7)
(continued...)

16

### c. Synthesis: Fixed Commissions for Non-extraordinary Duties

The challenge is, if possible, to give a meaning to both § 330(a)(3) and § 330(a)(7) that can be applied in all cases regardless of the applicable chapter.[11] In the process, we must try to minimize any potential conflict between the two provisions. Fortunately, non-bankruptcy federal law suggests a possible solution. There are certain instances outside of bankruptcy when federal law requires federal agencies and federal courts to consider the reasonableness of percentage-fee or commission-based compensation. See Bjustrom v. Trust One Mortg. Corp., 322 F.3d 1201, 1207-08 (9th Cir. 2003) (applying a two-part test developed by the U.S. Dept. of Housing and Urban Development to determine whether certain fees paid to mortgage brokers were reasonable and hence permissible under § 8(c) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(c)); Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1014

[10](...continued) would be entitled to primacy. See Bulova Watch Co. v. United States, 365 U.S. 753, 758 (1961).

[11]We could give an alternate and plausible meaning to both § 330(a)(3) and § 330(a)(7) if we were to assume that Congress actually meant for § 330(a)(7) to apply to all trustees except chapter 11 trustees, who would be subject only to § 330(a)(3). But we cannot assume that Congress inadvertently included chapter 11 trustees within the scope of § 330(a)(7). If Congress's inclusion of chapter 11 trustees in § 330(a)(7)'s coverage was inadvertent, it is up to Congress to fix the statute. See Lamie v. U.S. Trustee, 540 U.S. 526, 542 (2004).

(9th Cir. 2002) (same);[12] see also Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc., 959 F.2d 606, 613-14 (6th Cir. 1992) (applying test articulated by Municipal Securities Rulemaking Board to determine whether securities broker's markup on certain securities constituted an unreasonable and hence fraudulent fee under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and under SEC Rule 10b-5).[13]

     While these types of reasonableness reviews vary somewhat, their overarching purpose is consistent and clear: to determine whether there is a rational relationship between the duties to be compensated by the commission rate and the nature and range of services actually provided. When a rational relationship exists, the fee is presumed reasonable. Moreover, in each of these instances, federal courts applied standards that did not require a lodestar analysis to determine the reasonableness of the fees in question.

     We acknowledge that these nonbankruptcy commission cases are

---

[12]The Bjustrom/Schuetz test provides that a mortgage broker's fees are reasonable for purposes of RESPA § 8(c) when: "(1) the mortgage broker performed services that contributed to the transaction, and (2) . . . the total compensation received by the mortgage broker . . . was reasonably related to the services provided." Bjustrom, 322 F.3d at 1207 (citing Schuetz, 292 F.3d at 1006).

[13]The Bank of Lexington test "requires brokers to sell municipal securities at a price that is 'fair and reasonable, taking into consideration all relevant factors, including the best judgment of the broker . . . as to the fair market value . . . . , the expense involved in effecting the transaction, the fact that the broker . . . is entitled to a profit, and the total dollar amount of the transaction.'" Bank of Lexington & Trust Co., 959 F.2d at 613 (quoting Municipal Securities Rulemaking Board Manual-General Rules, G-30 (CCH) ¶ 3646 (1985)).

18

not directly comparable with § 326's commission rates. Most significantly, Congress has set chapter 7 trustee commission rates rather than the market. But we know of no reason why courts should second-guess Congress's clearly expressed intent to fix trustee commission rates for the vast majority of cases, especially given that Congress has set the duties that trustees such as Hopkins must perform to earn that commission.

Accordingly, absent extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed reasonable if they are requested at the statutory rate. Congress would not have set commission rates for bankruptcy trustees in §§ 326 and 330(a)(7), and taken them out of the considerations set forth in § 330(a)(3), unless it considered them reasonable in most instances. Thus, absent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review. Indeed, the Office of the United States Trustee has indicated that it will not object in these circumstances if the trustee does not even keep contemporaneous time records.[14]

---

[14]The statement appears on the United States Trustee's web site in the form of a Frequently Asked Question on Trustee Compensation as follows:
> Q: Are time records necessary to support a trustee's compensation?
> A: United States Trustees will not require a trustee to provide time records to support trustee compensation with regard to cases filed after October 17, 2005. It may, however, be prudent for a trustee to keep time records to address objections raised by other parties or to satisfy requirements of the court.

FREQUENTLY ASKED QUESTIONS (FAQs) FOR TRUSTEES, available at

(continued...)

19

Against this background, we must assume that Congress already has approved fees set as commissions in § 326 as reasonable for the duties it has set out for such trustees in § 704 and elsewhere in the Code. In effect, Congress has set both the duties of a trustee and the "market" rate for compensation related to the delivery of those services.

On the other hand, if extraordinary circumstances exist, or if chapter 11 trustee fees are at issue, the bankruptcy court may be called upon in those cases to determine whether there exists a rational relationship between the amount of the commission and the type and level of services rendered. In the case of a chapter 11 trustee, this determination necessarily requires consideration of the § 330(a)(3) factors, and also ordinarily includes a lodestar analysis. As for chapter 7, 12, and 13 trustee fees, when confronted with extraordinary circumstances, the bankruptcy court's examination of the relationship between the commission rate and the services rendered may, but need not necessarily include, the § 330(a)(3) factors and a lodestar analysis. But bankruptcy courts still must keep in mind that tallying trustee time expended in performing services and multiplying that time by a reasonable hourly rate ordinarily is beyond the scope of a reasonableness inquiry involving commissions. Simply put, a bankruptcy court that diminishes a trustee's compensation from the statutorily-set rate errs if the only basis offered for this diminution is a lodestar analysis.

[14](...continued)
http://www.justice.gov/ust/eo/bapcpa/trustees_faqs.htm#trust_issue4
(last visited July 20, 2102).

20

Although the legislative history is silent on the specific meaning and purpose of § 330(a)(7), our construction of § 330(a)(7) generally is consistent with the overall purpose of § 330, pursuant to which Congress sought to balance the general bankruptcy interest of conserving estate assets with the goal of fairly compensating bankruptcy trustees and professionals.[15] Especially now, when the most a chapter 7 trustee can expect in 90% of his or her cases is a flat $60 fee, a commission-based system for the other 10% has a certain symmetry to it. Under the system as Congress envisaged it, competent individuals with marketable skills and experience will have incentives to work in the bankruptcy area. In that sense, § 330(a)(7) represents Congress's latest effort to balance various competing policy interests with respect to the work assigned and the compensation paid to chapter 7 trustees.

**C. Applying § 330(a)(7) to This Case**

Based on the law set forth above, the bankruptcy court erred in determining Hopkins's fees. The bankruptcy court did not treat Hopkins's compensation as a commission based on § 326(a). Instead, the court compared the fees requested to what it considered a reasonable rate of compensation for the time Hopkins and his paralegals actually spent working on the case. The court offered no other grounds for its decision. In short, the bankruptcy court substituted a different standard for the

---

[15]For a detailed discussion of this legislative history, see Burgess v. Klenske (In re Manoa Fin. Co.), 853 F.2d 687, 689-90 (9th Cir. 1988) (citing H.R. Rep. No. 95-595, at 329-30 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6286; and, 124 Cong.Rec. 33,994 (1978), reprinted in 1978 U.S.C.C.A.N. 6505, 6511).

21

appropriate method and rate of compensation for Hopkins in place of the method and rate set by Congress.

When the bankruptcy court does not select and apply the correct law, we typically remand so that the bankruptcy court can apply the correct law to the facts of the case. However, an appellate court may decide a case on the facts previously found when the record is sufficiently developed and there is no doubt as to the appropriate outcome. See, e.g., Wharf v. Burlington N. R.R. Co., 60 F.3d 631, 637 (9th Cir. 1995); see also Weisgram v. Marley Co., 528 U.S. 440, 456 (2000); Cuddeback v. Florida Bd. of Educ., 381 F.3d 1230, 1236 n.5 (11th Cir. 2004).

In this instance, no further proceedings are necessary to apply the facts to the correct law. The record is complete and establishes that there was nothing unusual, let alone extraordinary, about the bankruptcy case or Hopkins's services.[16]

---

[16]We thus leave for another day the issue of what facts might qualify as extraordinary for purposes of activating the bankruptcy court's duty to determine the reasonableness of the § 326(a) commission rates.

Cf. Trustee Compensation, in the United States Trustee's Frequently Asked Questions about trustee compensation:

> Q: Is a trustee entitled to full statutory trustee fees in all circumstances?
>
> A: 11 U.S.C. § 330(a)(7) provides that the trustee fee is to be "treated as a commission." Absent extraordinary factors, the United States Trustee will not object to a trustee receiving full commission on all "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." Extraordinary factors are expected to arise only in rare and unusual circumstances and include situations such as where the trustee's case administration falls below acceptable standards, or where it appears a trustee has delegated

(continued...)

22

Indeed, the bankruptcy court described both the case and Hopkins's services as "routine." Based on the law we have articulated above, we are left with no doubt that, on these facts, the court should have awarded Hopkins $1,315.41 in fees – the full amount Hopkins had requested based on the compensation rates set forth in § 326(a).

## CONCLUSION

For the reasons set forth above, we REVERSE the bankruptcy court's fee award and REMAND this matter, with an instruction to enter a new fee award in the full amount requested by Hopkins, $1,315.41.

[16](...continued)
a substantial portion of his duties to an attorney or other professional.
FREQUENTLY ASKED QUESTIONS (FAQS) FOR TRUSTEES, available at
http://www.justice.gov/ust/eo/bapcpa/trustees_faqs.htm#trust_issue4
(last visited July 20, 2012).

23