
NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DANA KIM SHELTON,<br>　　　　　　Debtor. | BAP No. CC-24-1114-CFL |
| DANIEL KEITH LARSON,<br>　　　　　　Appellant,<br>v.<br>RICHARD A MARSHACK, Trustee,<br>　　　　　　Appellee. | Bk. No. 8:17-bk-12887-SC<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: CORBIT, FARIS, and LAFFERTY, Bankruptcy Judges.

### INTRODUCTION

Dana Kim Larson Perez Shelton ("Debtor") and her siblings, Daniel
Larson ("Daniel"[1]) and Sharon Sims ("Sims"), are involved in protracted
state court litigation over the estate of their late parents. Unrelated to the
state court proceedings, Debtor filed a chapter 7[2] bankruptcy petition and

---

[*] This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

[1] Because Debtor's brother, sister-in-law, and mother share the same last name,
we refer to each by their first name for clarity. No disrespect is intended.

[2] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal

received her discharge. Daniel appeals the bankruptcy court's order granting the fee applications of the chapter 7 trustee and his professionals. We DISMISS for lack of standing.

## FACTS[3]

### A.    Pre bankruptcy events

On July 9, 1991, Debtor and her then-husband, Gary Perez, borrowed $118,000 from Daniel and Debtor's mother Barbara Larson ("Barbara") (the "Loan") to pay off the existing loan on their property on Amelia Street in Anaheim, California (the "Property"). The Loan was evidenced by a promissory note and secured by a first deed of trust (the "First DOT") on the Property jointly in favor of Barbara and Daniel.

In 2007, Barbara and her husband Gerald Larson executed a revocable trust (the "Larson Trust") as settlors and original co-trustees. Gerald Larson died in 2010, at which point Barbara became the sole trustee. Barbara died the following year, and Debtor was named as successor trustee. Debtor, Daniel, and Sims were each one-quarter beneficiaries under the Larson Trust.

In 2016, as part of the ongoing litigation involving the Larson Trust and Barbara's probate estate, a California state court issued an order (the "Loan Payment Order") determining inter alia that: (a) the total balance of

---

Rules of Bankruptcy Procedure.

[3] We exercise our discretion to take judicial notice of documents electronically filed in Debtor's main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

the Loan as of February 17, 1994 was $110,110.76 and was $387,861.93 as of August 31, 2015; (b) interest on the Loan was compounded monthly at 6% per year; and (c) Daniel and the Larson Trust each held a one-half beneficial interest in the Loan. Daniel was awarded $18,026.19 in attorney's fees and costs ("Fee Award"). Daniel subsequently granted half of his one-half interest to his wife, Erin Larson ("Erin").

Debtor was eventually replaced as successor trustee by Peter Kote, a public trustee ("Kote"). In replacing her, the state court recognized that because Debtor was both the obligor and a beneficiary under the Loan, there existed a conflict of interest in Debtor's official capacity as the first successor trustee of the Larson Trust.

**B. The bankruptcy case**

On July 20, 2017, Debtor filed a chapter 7 bankruptcy petition. Richard A. Marshack was appointed as the chapter 7 trustee ("Trustee"). The bankruptcy court later approved Trustee's motion to employ the law firm of Pagter and Perry Isaacson, APLC ("PPI") as general counsel for Trustee and a tax professional for the estate ("Trustee's Accountant").

Debtor received her discharge on November 6, 2017.

**1. Motion to sell**

In her bankruptcy schedules, Debtor listed a 100% interest in the Property which she valued at $605,000. Debtor indicated the Property was encumbered by secured claims totaling $475,881 and claimed a homestead

3

exemption in the amount of $75,000.[4] Because there was equity in the Property, Trustee sought to sell the Property free and clear of liens and interests pursuant to § 363(f)(4). Trustee argued there was a bona fide dispute as to the claims secured by the Property based on the significant disparity in the proof of claim filed by Kote as compared to Daniel. Trustee argued that Kote's claim for $219,684.13 was the correct amount of one-half of the Loan balance as of October 17, 2017, whereas Daniel's claim for $849,759.26 was inflated with unrelated legal fees and costs. Trustee further argued that, despite the state court orders, Daniel continued to claim that Barbara's beneficial interest in the Loan flowed to him instead of the Larson Trust.

The bankruptcy court approved the sale, and eventually the sale closed.

### 2. Adversary proceeding and settlements

On January 9, 2018, before disbursing the Property sale proceeds, Trustee filed an adversary proceeding against Daniel and Erin, Kote, and Bank of America to determine the validity, priority, and extent of any liens on the Property and to object to Daniel's overstated proof of claim. Trustee was able to settle his complaint through individual Rule 9019 compromises with each of the defendants. In return for releasing all claims and liens

---

[4] The bankruptcy court previously approved a stipulation between the Trustee and Debtor regarding her homestead exemption in order to facilitate the sale of the Property. The stipulation provided that Debtor would split her allowed homestead exemption 50/50 with the estate.

against the Property, the parties received the following payments: Bank of America received $30,000; Daniel and Erin received $221,989.87 (the "Larson Compromise"); and Kote received $219,684.13 (the "Trust Compromise"). Daniel, Erin, and Sims appealed the Trust Compromise, arguing that Barbara's beneficial interest in the Loan was not an asset of the Larson Trust and therefore, Daniel rather than Kote was the proper party to the settlement. The district court dismissed the appeal for lack of standing. The Ninth Circuit affirmed.

## C.    Fee applications

On March 8, 2022, PPI, counsel for Trustee, filed its first and final fee application seeking $75,805.00 in fees and $1,905.40 in costs. The fee application was supported by a summary report, declaration, and detailed time sheets. According to the fee application, PPI was seeking $2,145.00 for "asset analysis and recovery"; $8,940.00 for "asset disposition"; $2,960.00 for "case administration"; $540.00 for "claims administration and objection"; $3,840.00 for "fee/employment applications"; $120.00 for "Meeting of creditors"; $120.00 for "Miscellaneous"; and $57,140.00 for "litigation."

On February 18, 2022, Trustee's Accountant filed his first and final fee application seeking fees in the amount of $1,720.00 and costs of $266.80.

On May 6, 2024, Trustee filed Trustee's Final Repor indicating that he had brought $605,000.00 into the estate. Trustee sought $15,220.05 in fees

5

and $273.39 in costs. Trustee noted that pursuant to the statutory scheme, he could have sought as much as $31,754.10 in fees.

On May 20, 2024, Daniel filed an opposition to Trustee's Final Report in his capacity as "trustee and beneficiary of the Estate of Barbara Anne Larson's Recorded Deed." Daniel argued that Trustee failed in his statutory duties because as a matter of law, all proceeds from the sale of the Property should have been paid to Daniel and not to Trustee or his professionals. Daniel did not object to the fee applications of PPI or Trustee's Accountant nor did Daniel appear at the hearing on the fee applications.

The bankruptcy court issued an order ("Fee Order") approving each of the three fee applications in the full amount requested based "on findings and conclusions made by the court on the record at the hearing and for the reasons stated on the record."

Daniel timely appealed the Fee Order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether this appeal should be dismissed for lack of standing.

Whether the bankruptcy court's Fee Order was an abuse of discretion.

**STANDARDS OF REVIEW**

Standing is a legal issue reviewed de novo. *Loyd v. Paine Webber, Inc.*, 208 F.3d 755, 758 (9th Cir. 2000). De novo means that we review a matter anew, as if no decision previously had been rendered. *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009).

We review for an abuse of discretion the bankruptcy court's award of fees to a chapter 7 trustee and his professionals. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A.      Daniel fails to establish standing to appeal the Fee Order.**

The Panel has an independent obligation to examine its jurisdiction under 28 U.S.C. § 158. *See Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 238 (9th Cir. BAP 2002). Standing is a jurisdictional requirement derived from the "case-or-controversy" requirement of Article III of the Constitution. *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.)*, 80 F.4th 901, 905-06 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1064 (2024); *Veal v.*

*Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 906 (9th Cir. BAP 2011). As the party invoking federal jurisdiction, Daniel bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

On appeal, Daniel does not address standing with any cogent argument. Although he makes passing references to sections of the California Probate Code, he fails to explain the relevance of the statutes to the instant appeal. We hold that Daniel fails to establish standing to appeal the Fee Order.

### 1. Daniel cannot represent the trust.

Daniel indicates that, in his individual capacity, he "seeks no relief in this court" and "is not a party to this appeal." Rather, Daniel asserts that he is appearing in this appeal in his "Sole Capacity as Trustee and 25% Beneficiary of the Estate of Barbara Anne Larson's Individual, Secured and Recorded Deed of Trust Lien ('Barbara's DOT')."

Based on Daniel's assertions, the BAP Clerk of Court issued an order requiring Daniel to explain why the trust had standing to participate in this appeal given the trust did not file a timely notice of appeal, and to explain why Daniel could represent the trust in the appeal. After due consideration, the BAP Motions Panel issued an order ("Scope of Representation Order") correctly limiting Daniel's appearance in this appeal "**to representing himself as an individual**, not on behalf of any other person or entity, including any trust." (Emphasis added.) *See* Cal. Prob. Code § 8400(a) ("A person has no power to administer the estate until

8

the person is appointed personal representative and the appointment becomes effective. Appointment of a personal representative becomes effective when the person appointed is issued letters."); *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004) (explaining that trusts must be represented by licensed counsel); *Gonzalez v. JP Morgan Chase Bank, N.A.*, No. C-14-2558 EMC, 2014 WL 5462550, at *3 (N.D. Cal. Oct. 28, 2014) (explaining that a "representative of an estate may not appear pro se where the estate has creditors or beneficiaries other than the estate representative").

Thus, regardless of Daniel's assertions to the contrary, based on the Scope of Representation Order and the applicable law, Daniel cannot represent the trust in the present appeal.

### 2. Daniel fails to establish standing to appeal the Fee Order in his individual capacity.

The issue then turns to whether Daniel, in his individual capacity, has standing to object to the Fee Order. "Standing is a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Veal*, 450 B.R. at 906 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Constitutional standing requires the appellant demonstrate he has (1) suffered an "injury in fact" that is concrete, particularized, and actual or imminent, (2) the injury is "fairly traceable" to the orders appealed, and (3) the injury can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61. Prudential standing, on the other hand, is "a body of judicially self-

9

imposed limits on the exercise of federal jurisdiction founded in concern about the proper—and properly limited—role of the courts in a democratic society." *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (internal quotation marks and citations omitted). Prudential standing provides that only a person aggrieved -- that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order -- has standing to appeal that order. *In re Veal*, 450 B.R. at 907. We determine that Daniel does not have constitutional or prudential standing to challenge the Fee Order.

First, Daniel fails to establish constitutional standing. Daniel and Erin filed two proofs of claim, which were later withdrawn based on the Larson Compromise and Daniel and Erin's full payment under the Loan and Compromise. As such, Daniel has been fully paid and has no outstanding claims against the estate, and Daniel would not receive any additional funds from the estate if we reverse or modify the Fee Order. Thus, Daniel in his individual capacity cannot establish a particularized, concrete, judicially cognizable interest in the outcome of the fee applications. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to

resolve.") (internal quotation marks and citation omitted). Therefore, Daniel fails to establish constitutional standing.

Second, Daniel fails to establish prudential standing. To meet the "person aggrieved" test, an appellant must show that he or she is "directly and adversely affected pecuniarily by an order of the bankruptcy court[.]" *Duckor, Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)). An order has a direct and adverse pecuniary effect if it "diminish[es] the appellant's property, increase[s] its burdens, or detrimentally affect[s] its rights." *Id.*

Here, Daniel cannot demonstrate that he is directly and adversely affected pecuniarily by the Fee Order. Again, Daniel's claim was paid in full. He would not receive a penny more or a penny less based on the outcome of the fee applications. Therefore, because the Fee Order did not diminish Daniel's property, increase his burdens, or detrimentally affect his rights, Daniel lacks standing to bring this appeal.

## B.     The bankruptcy court's Fee Order was not an abuse of discretion.

Even if Daniel established standing, the Panel would affirm because the Fee Order was not an abuse of the bankruptcy court's discretion.

Daniel's appeal is frivolous. He does not direct the Panel to specific legal errors or erroneous factual findings by the bankruptcy court. Indeed, it is difficult to discern any cogent argument by Daniel as to why the Fee Order was error and the Panel "need not ferret out arguments and seek to

11

substantiate them in law when [appellant] fails to do so." *Koncicky v. Peterson (In re Koncicky)*, BAP No. WW-07-1170-MkPaJ, 2007 WL 7540997, at *4 (9th Cir. BAP Oct. 19, 2007) (citation omitted).[5]

Rather, as is evident by the relief requested by Daniel in his appellate briefing, Daniel is attempting to use the appeal as an impermissible collateral attack regarding Barbara's estate's beneficial ownership in the First DOT – an issue previously decided by the state court and not subject to a different ruling by the bankruptcy court. *See, e.g., Gruntz v. Cnty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1078 (9th Cir. 2000) (en banc) (stating that "federal district courts have no authority to review the final determinations of a state court in judicial proceedings") (internal quotation marks and citation omitted).

Regardless, the record amply demonstrates that the amounts awarded by the Fee Order were within the discretion of the bankruptcy court. Section 330 provides that the bankruptcy court may award a trustee and his professionals "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses."

---

[5] We note that Daniel has not provided a copy of the transcript of the hearing on the fee applications even though the Fee Order stated that it was granted based "on findings and conclusions made by the court on the record at the hearing and for the reasons stated on the record." When findings of fact and conclusions of law are made orally on the record, a transcript of those findings is mandatory for appellate review. *McCarthy v. Prince (In re McCarthy),* 230 B.R. 414, 416-17 (9th Cir. BAP 1999). Accordingly, in examining what record has been provided, the Panel need only look for any plausible basis upon which the bankruptcy court could have made the decision it did and "[i]f we find any such basis, then we must affirm." *Id*.

§ 330(a)(1)(A)-(B). Here, $31,754.10 in trustee fees would have been presumptively reasonable absent extraordinary circumstances. *In re Salgado-Nava*, 473 B.R. at 915 (holding that trustee compensation calculated under § 326(a) is presumptively reasonable and should be allowed absent extraordinary circumstances). Trustee, however, sought reduced fees in the amount of $15,220.05 and $273.39 in costs. PPI also agreed to accept reduced fees. Additionally, the record shows that the fee applications for each professional included a detailed description of the services rendered, explanation of why the services were necessary, and itemization of costs and fees.

Because the bankruptcy court applied the correct legal standard and its factual findings were not erroneous, the Fee Order was not an abuse of discretion.

## CONCLUSION

We DISMISS for lack of standing. Alternatively, we would AFFIRM.