FILED

APR 08 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.  NC-15-1055-DTaKu |
| ) | |
| STERLING V. HARWOOD, ) | Bk.  No.  13-55890 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| RONALD MENDEZ, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| STERLING V. HARWOOD, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Submitted without Oral Argument
on March 17, 2016

Filed - April 8, 2016

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances:     Appellant Ronald Mendez, pro se, on brief; Lars T.
Fuller and Sam Taherian of The Fuller Law Firm, PC
on brief for appellee.

Before: DUNN, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Creditor Ronald Mendez appeals from the bankruptcy court's order overruling his objection to confirmation of debtor Sterling Harwood's chapter 13[2] plan.  We AFFIRM.

## I.  FACTUAL BACKGROUND[3]

**A.  Prepetition events**

Mendez is an inmate of the California Department of Corrections and Rehabilitation.  In 2007, while Mendez was housed at Folsom State Prison, he met Harwood, an attorney, and requested his assistance in seeking postconviction relief. Mendez gave Harwood the names of "alibi witnesses" whom he wanted Harwood to interview in the hopes of establishing grounds for a

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] Harwood asks us to take judicial notice of the prior criminal conviction of his former client Mendez, whom he labels "an incarcerated violent felon."  Harwood argues that, under the Federal Rules of Evidence ("FRE"), evidence of the conviction "**must** be admitted," and Mendez' various declarations "**must** be weighed in light of [Mendez'] conviction." (Emphases in original.)

This argument misapprehends both the FRE and our role as an appellate body.  First, FRE 609(a)(1)(A) makes admission of prior conviction evidence subject to the balancing test of FRE 403, and FRE 609(b) further limits its admissibility if the conviction is more than ten years old.  Second, we, as an appellate body, are not called upon to "weigh" Mendez' declaration evidence, as it is not our place to substitute our own credibility judgments for those of the bankruptcy court.

For both these reasons, we DENY the request for judicial notice.  The facts recited here are for background purposes only, and, to the extent they are drawn from statements made by Mendez or are disputed, we have so indicated.

new trial.  Harwood requested $1,000 for each of the five witnesses, and Mendez, acting through friends and relatives outside of prison, paid $3,000 as what Harwood called a "flat fee" to investigate the first three witnesses.

Apparently, the investigation made little progress, and Harwood eventually indicated he would pursue a different strategy.  Harwood requested a total of $15,000 to prepare, file and argue a motion for a new trial, and Mendez signed a retainer agreement to that effect.  The $15,000 fee was paid in full by Mendez' former spouse, Sandra Huerta-Mendez, in September 2008.  Over the following months, Mendez became dissatisfied with his attorney, concerned about the lack of progress and communication.  In February 2009, Mendez sent Harwood two letters, complaining that Harwood had not produced "one piece of news" regarding the matter, had not returned an executed copy of their agreement or receipts for payment, and had misled Mendez and his family regarding Harwood's purported association with another attorney, who allegedly had denied any involvement in the matter.  Mendez demanded that Harwood either remedy these purported failures or return all the money - a total of $18,000 - that he had received from Mendez and his family; otherwise, Mendez threatened to submit a complaint to the California Bar Association.

In August 2009, Harwood visited Mendez at the prison. According to Mendez, Harwood reported that he had lost the paperwork relating to his representation of Mendez during a recent move, owing to Harwood's mounting financial difficulties. Harwood allegedly told Mendez he could not repay the $18,000, and he had insufficient resources to continue pursuing the matter.

3

On March 1, 2011, Mendez filed a complaint against Harwood in the Superior Court of California, County of Santa Clara (the "State Court"), alleging breach of contract, "common counts" and fraud. The asserted basis of the fraud claim was "Promise Without Intent to Perform," and Mendez alleged damages in the amount of "$18[,]000, which is the total amount paid to [Harwood] to perform promises [Harwood] never intended to perform." Specifically, Mendez alleged that Harwood did not intend to perform his promises to investigate and to prepare, file and argue a motion for a new trial.

Default was entered against Harwood in the State Court on March 26, 2012. On June 25, 2012, the State Court clerk entered a request for entry of default judgment. Then, on November 30, 2012, Harwood filed a motion to set aside the June 25 request for entry of judgment. He stated in an attached declaration that Mendez had sent the State Court complaint and summons to the address of Harwood's father-in-law, who spoke little English and did not understand the need to transmit the documents to Harwood. Although Harwood's declaration appears to indicate that he had been aware of the State Court action for at least five months, he argued his delay in response should be excused due to the lack of personal service, along with his financial and medical problems, which prevented him from responding timely.

The State Court disagreed with Harwood, noting that his motion did not address the fact that default already had been entered in March, making Harwood's motion untimely. Regarding Harwood's argument that service had been improper, the State Court found that "an examination of the proof of service [did]

4

not reveal any defect in service." Finding Harwood "ha[d] not adequately explained the entire period of delay," the State Court denied the motion and subsequently entered judgment by default in favor of Mendez in the amount of $26,887.36.[4]

**B. Harwood's bankruptcy case**

In response to garnishment based on the State Court judgment, Harwood filed a skeletal chapter 13 petition. His first bankruptcy case was dismissed for failure to file necessary schedules and complete credit counseling. At that point, Harwood retained bankruptcy counsel and filed a second chapter 13 petition. On his schedule of unsecured creditors ("Schedule F"), Harwood listed Mendez' claim with the notation: "Alleged breach of contract[.] Debtor disputes any liability to this individual. A default was taken based on improper service." Harwood's initial chapter 13 plan proposed to make no payments to unsecured creditors, but an amended plan proposed to distribute a total of $16,920 on unsecured claims over a five-year period.

In addition to filing a proof of claim,[5] Mendez objected to confirmation of Harwood's plan. Initially, the basis for Mendez' objection was his allegation that Harwood had concealed or transferred assets. Mendez eventually abandoned that argument and submitted a brief presenting a series of alternative bases

---

[4] This figure includes interest and costs, but it is unclear from the record how the total amount was calculated.

[5] We exercise our discretion to take judicial notice of documents filed in Harwood's bankruptcy case. See Fear v. United States Trustee (In re Ruiz), 541 B.R. 892, 894 n.3 (9th Cir. BAP 2015); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

for his objection ("Objection Brief"): (1) Harwood had filed his petition and proposed his plan in bad faith; (2) the "unclean hands" doctrine prohibited confirmation; (3) the plan was part of a "ploy" to discharge a nondischargeable debt; and (4) the value of the property to be distributed to unsecured creditors under the plan was less than what those creditors would receive in a chapter 7 liquidation; that is, the plan was not in the best interests of creditors.

Mendez argued that Harwood had demonstrated bad faith in part by mischaracterizing his claim on Schedule F, both by omitting any mention of the fraud count of the State Court complaint and by describing service of the State Court complaint as "improper" in spite of the State Court's finding to the contrary. According to Mendez, these misstatements, taken together with the fact that Harwood's initial plan proposed to make no payments to unsecured creditors, supported a finding of bad faith, unclean hands and an inappropriate effort to discharge a nondischargeable debt. Mendez further took issue with Harwood's statement that he filed for bankruptcy relief to forestall wage garnishment, which Mendez took as an admission that the filing was intended "to defeat the state court action," further supporting a finding of bad faith.

The bankruptcy court entered an order overruling Mendez' objection to confirmation ("Order"). The court found, contrary to Mendez' arguments, that Harwood had filed his petition and proposed his plan in good faith. Specifically, the court found that the description of Mendez' claim on Harwood's Schedule F was not a misrepresentation, as the State Court judgment did not

6

distinguish between the breach of contract and fraud claims pleaded in the State Court complaint. Although Harwood had filed both of his chapter 13 petitions at least partially in response to Mendez' wage garnishment, the court concluded he was "well within his rights" to do so, as he was not using the bankruptcy process "solely to defeat state court litigation."

Concerning Mendez' argument that Harwood had proposed his plan in a bad faith effort to discharge a nondischargeable debt, the bankruptcy court noted that Mendez had not filed a nondischargeability complaint within the time allowed.[6] Because Harwood's debt to Mendez had not been declared nondischargeable, the court found no basis to conclude the chapter 13 plan was proposed in bad faith. Having found that the plan was not proposed in bad faith, the bankruptcy court applied the same analysis to Mendez' "unclean hands" argument, concluding the unclean hands doctrine was inapplicable, and the "analysis [wa]s subsumed in the examination of [Harwood's] good faith."

With respect to the "best interests of creditors" argument, the bankruptcy court concluded that the plan satisfied the applicable test. Based on Harwood's schedules, the bankruptcy court found that general unsecured creditors would have received

---

[6] Any complaint seeking to determine the dischargeability of a debt must be filed no later than 60 days following the date set for the meeting of creditors. Rule 4007(c). According to the main case docket, Harwood's meeting of creditors was scheduled for December 23, 2013. Therefore, if Mendez wished to seek a determination that the debt owed to him was nondischargeable, he was required to file an adversary proceeding complaint by February 21, 2014. The main case docket reveals that no such complaint was filed.

no distributions in a hypothetical chapter 7 case. Thus, Harwood's plan, which proposed to pay $16,920 to unsecured creditors, was in the best interests of creditors.

Based on its analysis, the bankruptcy court overruled Mendez' objection to confirmation of Harwood's plan. This appeal followed. The bankruptcy court's order confirming Harwood's plan was entered on February 27, 2015.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion in overruling Mendez' objection to plan confirmation.

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's decision to confirm a chapter 13 plan for abuse of discretion. de la Salle v. U.S. Bank, N.A. (In re de la Salle), 461 B.R. 593, 601 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion only if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or unsupported by inferences that may be drawn from the evidence in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011); United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). We may affirm the decision of the bankruptcy court on any basis supported by the record. See ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d

8

1082, 1086 (9th Cir. 2008).

## V.  DISCUSSION

Mendez states a total of seven issues on appeal, but most of them relate to asserted errors in the bankruptcy court's good faith determinations and to the purported nondischargeability of the debt owed to Mendez.

## A.  Good faith generally

Section 1325, which governs the confirmation of chapter 13 plans, imposes two requirements of good faith.  The bankruptcy court must consider, first, whether "the plan has been proposed in good faith and not by any means forbidden by law," and second, whether "the action of the debtor in filing the petition was in good faith."  Section 1325(a)(3), (7).  Thus, the debtor must exercise good faith both in filing the chapter 13 petition and in proposing a plan.

In evaluating a debtor's good faith in connection with both the petition and the plan, the bankruptcy court must consider

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition or plan in an inequitable manner  . . . ;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor only intended to defeat state court litigation; and
>
> (4) whether egregious behavior is present[.]

Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999) (internal quotation marks and citations omitted); see also Drummond v. Welsh (In re Welsh), 711 F.3d 1120, 1132 (9th Cir. 2013).  The bankruptcy court correctly identified and applied each of these factors in its written findings and conclusions.

9

We therefore must affirm the Order unless we determine that the bankruptcy court's factual findings were illogical, implausible or without support from inferences that can be drawn from the record. Hinkson, 585 F.3d at 1262.

In his Objection Brief, Mendez made two specific arguments in relation to these factors. With respect to the first factor, Mendez argued that Harwood misrepresented the nature of his debt by describing the basis for the debt as an "[a]lleged breach of contract," without mentioning that Mendez' State Court complaint also included a fraud claim. We see no clear error in the bankruptcy court's finding that Harwood's description of the debt was adequate. As the bankruptcy court noted, the State Court judgment did not distinguish between the causes of action stated in the State Court complaint. Though Harwood could have provided greater detail concerning the specific causes of action giving rise to the State Court judgment, his decision not to do so did not require a finding of bad faith. The same is true with respect to Harwood's notation that the default judgment was "based on improper service." This statement, though arguably inaccurate in light of the State Court's finding that service was proper, does not evince an intention to mislead the bankruptcy court or unfairly manipulate the Code.

Concerning the second and third factors, Mendez argued that Harwood had demonstrated bad faith by filing his first chapter 13 case for the stated purpose of avoiding wage garnishment, after which he allowed that case to be dismissed and filed a second chapter 13 case. Granted, a debtor's intent "to frustrate collection of a state-court judgment" is properly considered in a

10

good faith analysis. In re Welsh, 711 F.3d at 1132. But this does not mean every chapter 13 petition that is immediately precipitated by the threat of wage garnishment by a judgment creditor is filed in bad faith. The bankruptcy court found that Harwood had acted "well within his rights" by filing his petitions "in response to mounting financial pressure, even if that pressure included wage garnishment from a judgment debt." The record provides support for this finding.

**B. Unclean hands**

In addition to his arguments concerning bad faith, Mendez argued that the doctrine of "unclean hands" should preclude Harwood from availing himself of bankruptcy relief. The bankruptcy court concluded the doctrine was "subsumed in the examination of a debtor's good faith."

The unclean hands doctrine provides that a plaintiff in equity must "have acted fairly and without fraud or deceit as to the controversy in issue." Id. (citing Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985)). This equitable doctrine has been held applicable in bankruptcy proceedings. See, e.g., Northbay Wellness Group, Inc. v. Beyries (In re Beyries), 789 F.3d 956, 959 (9th Cir. 2015) (unclean hands doctrine applicable in dischargeability proceedings). We agree with the bankruptcy court, however, that the doctrine is not applicable in the chapter 13 plan confirmation context. Section 1325(a) provides that "the court shall confirm a plan" if the provisions of §§ 1325(a) and (b) are satisfied. Where those requirements are met, the bankruptcy court's inherent equitable powers do not permit it to impose additional requirements for

11

plan confirmation.  See Law v. Siegel, 134 S.Ct. 1188, 1194 (2014) (bankruptcy court's inherent powers do not allow it to contravene express Code provisions).  Thus, the bankruptcy court did not err in rejecting the unclean hands doctrine as a potential barrier to confirmation separate and distinct from the good faith requirements of § 1325(a)(3) and (7).

**C.   Nondischargeability**

Mendez also argued that the bankruptcy court should deny confirmation of Harwood's plan because the plan was "a ploy to discharge a nondischargeable debt."  In his Objection Brief, Mendez argued that the debt owed to him was based on fraud and therefore nondischargeable.[7]  The bankruptcy court was correct in rejecting this argument.

To begin with, there is no general principle prohibiting a debtor from including in his schedules and plan a debt that later might be declared nondischargeable.  If a creditor wishes to prevent the discharge of a debt owed to him, it is up to the creditor to take the appropriate action.  Even if the creditor does obtain a judgment of nondischargeability, which Mendez did not do here, it does not follow that the debtor's petition or

---

[7] In his opening brief, Mendez raises the new argument that Harwood's debt to him is nondischargeable because of the purported existence of a fiduciary relationship between Harwood and Mendez.  This argument was not raised before the bankruptcy court and is not properly before us.  See U.S. v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar Cal., Trinity Cty., 787 F.3d 968, 979 (9th Cir. 2015) ("general practice" is not to consider arguments raised for the first time on appeal).
We do not consider this argument, except to note that the following discussion applies with equal force regardless of which theory of nondischargeability Mendez espouses.

12

plan was filed in bad faith.

There is some authority for the proposition that a debtor's effort to discharge through chapter 13 a debt that would be nondischargeable under chapter 7 may be relevant to a good faith analysis. See, e.g., United States v. Estus (In re Estus), 695 F.2d 311, 316 (8th Cir. 1982) (including among factors for analysis "the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7"). But Estus was decided during an era in which the discharge available in chapter 13 was much broader than the chapter 7 discharge. Subsequent amendments to the Code have narrowed this so-called "super discharge" significantly.[8] There is no indication in the record, nor has Mendez argued, that the obligation owed to him is of a type dischargeable in chapter 13 but nondischargeable in chapter 7. Rather, Mendez contended that the debt is not dischargeable in either chapter.

Moreover, as the bankruptcy court correctly pointed out, Mendez neither obtained a judgment excepting Harwood's debt to him from discharge, nor even filed an adversary proceeding complaint to achieve that result. The exceptions to discharge set forth in § 523(a)(2), (4) and (6) are not self-executing. See Mohsen v. Wu (In re Mohsen), 2010 WL 6259979 at *6 (9th Cir. BAP Dec. 21, 2010). Rather, § 523(c)(1) provides, with exceptions not applicable here, that a creditor must request and

---

[8] See § 1328(a)(2), which excepts from the chapter 13 discharge, among other things, "any debt . . . of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), or (9) of section 523(a)."

13

obtain a determination of nondischargeability. Rule 4007, in turn, provides that the proper avenue for such a request is an adversary proceeding, which must be commenced within 60 days following the date set for the debtor's meeting of creditors. Mendez did not commence an adversary proceeding within the time permitted.[9] We therefore conclude that the bankruptcy court did not abuse its discretion in rejecting Mendez' nondischargeability argument.

**D.    Mendez' lack of opportunity to reply**

Finally, we take up Mendez' contention that "it was error for [the bankruptcy c]ourt to confirm [Harwood's] Plan without [Mendez] having seen or been allowed to reply to [Harwood's] response . . . ." A review of the bankruptcy court docket shows Mendez initially filed his objection to confirmation on January 9, 2014. A hearing was held on the matter on July 24, 2014, and an Order Setting Briefing Schedule ("Scheduling Order") was entered the same day. The Scheduling Order set deadlines for Mendez to file his Objection Brief and for Harwood to file a response, and it provided that Mendez' objection would be deemed submitted on October 9, 2014. The Scheduling Order made no allowance for a reply by Mendez.

Mendez did not file his Objection Brief within the time set by the Scheduling Order, but, according to a docket text entry on October 16, 2014, the court "excuse[d] the lateness of the [Objection Brief]" due to Mendez' incarceration. Harwood never

---

[9] We express no opinion as to whether such an action would have been successful.

14

filed a response, although prior to the filing of the Objection Brief, Harwood had submitted a five-paragraph declaration in which he "categorically den[ied]" that he had filed the petition in bad faith.  In sum, the reason Mendez did not see Harwood's response to his Objection Brief is that Harwood did not file a response.  There was no reason for the bankruptcy court to permit any further briefing or argument, and it did not err in taking the matter under submission in accord with the Scheduling Order.

## VI.  CONCLUSION

Based upon the foregoing, we conclude that the bankruptcy court did not abuse its discretion in overruling Mendez' objection to confirmation of Harwood's amended chapter 13 plan. We AFFIRM.

15