# FILED

DEC 11 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   EC-15-1133-DJuF |
| ) | |
| DELIA RUIZ, ) | Bk. No.   14-10282 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| PETER L. FEAR, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| Appellee.[1] ) | |
| _____ ) | |

Argued and Submitted on November 19, 2015
at Sacramento, California

Filed - December 11, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

Appearances:   Appellant Peter L. Fear, argued pro se.

Before:  DUNN, JURY, and FARIS, Bankruptcy Judges.

Opinion by Judge Dunn
Concurrence by Judge Jury

---

[1] The United States Trustee did not participate in this appeal.

DUNN, Bankruptcy Judge:

Chapter 7[2] trustee Peter L. Fear ("Trustee") applied to the bankruptcy court for compensation and payment of expenses. Although the application was unopposed, the bankruptcy court awarded the Trustee only a portion of the requested compensation, reasoning that the requested amount, which exceeded the amount available for distribution on allowed unsecured claims, was too high. The Trustee appeals. We VACATE the order of the bankruptcy court and REMAND the matter for further proceedings.

## I. FACTUAL BACKGROUND

The Debtor, Delia Ruiz, filed a chapter 7 petition on January 23, 2014. The Trustee was appointed on the same date. On Schedule B, the Debtor listed an ownership interest in seven motor vehicles, including a 2007 Dodge Ram pickup truck (the "Dodge"), which the Debtor valued at $28,525.[3] According to the Debtor's Schedule D, the Dodge was subject to a lien in the amount of $16,477.35. The Debtor also claimed exemptions in the Dodge in the total amount of $12,047.65, the full amount of the Dodge's scheduled value net of the lien.

Based on the Debtor's schedules, along with information the Debtor provided following the first § 341(a) meeting of

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[3] We exercise our discretion to take judicial notice of documents filed in the Debtor's bankruptcy case, including the Debtor's schedules. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-2-

creditors, the Trustee tentatively concluded that the estate likely had no interest in the Dodge. This conclusion changed over the course of the next four months and several continuances of the meeting of creditors, as the Debtor twice amended her schedules to revise her claimed exemptions and contemplated making an offer to purchase her nonexempt assets back from the estate. Ultimately, the Debtor removed her claimed exemptions in the Dodge, and the Trustee concluded the meeting of creditors and commenced the process of selling the Dodge at auction.

The auctioneer expressed some skepticism that he could sell the Dodge for its scheduled value,[4] but he believed it would provide some return for unsecured creditors. The bankruptcy court approved the auctioneer's employment, and the auction took place as scheduled on July 26, 2014. The auctioneer's expectation proved correct: the Dodge sold for $21,000, significantly less than its scheduled value but enough to pay unsecured claims in part.

On October 24, 2014, the Trustee filed his Final Report, Application for Compensation and Applications for Compensation of Professionals ("Final Report"). The Trustee reported total receipts of $21,000, all attributable to the sale of the Dodge. From that amount, the Trustee disbursed $15,046.84 to Safe 1 Credit Union, the holder of the lien on the Dodge, and $2,758 to the auctioneer. This left the estate with $3,195.16, which the Trustee proposed to distribute as follows: $2,300 to the Trustee

---

[4] The Debtor's most recently filed Schedule B valued the Dodge at $32,000.

for his fees and $52.44 for his expenses; and the remaining $842.72 to general unsecured creditors. Concurrently with the Final Report, the Trustee filed a Narrative Report and Application for Compensation and Expenses ("Application"). As shown in a table included in the Application, the maximum compensation allowed under § 326 was $2,850, but the Trustee requested less than the full amount in an apparent effort to provide a greater distribution to creditors.[5] Notwithstanding this $550 reduction from the statutory commission, the Trustee's proposed distribution would have allowed the Trustee to receive roughly three quarters of the funds remaining in the estate.[6]

Though no objections were filed to the Final Report, the bankruptcy court entered an order setting the matter for hearing to address the lopsided proposed distribution ("Hearing Order").[7] The bankruptcy court noted that under our decision in Hopkins v. Asset Acceptance LLC (In re Salgado-Nava), 473 B.R. 911 (9th Cir. BAP 2012), a trustee's commission as calculated under § 326 is presumptively reasonable except in extraordinary circumstances. Citing In re Scoggins, 517 B.R. 206 (Bankr. E.D. Cal. 2014), the bankruptcy court stated that "[a] chapter 7

---

[5] The calculation of the Trustee's maximum compensation under § 326 is as follows, based on total disbursements of $21,000: 25% of the first $5,000 = $1,250; 10% of the remaining $16,000 = $1,600; $1,250 + $1,600 = $2,850.

[6] The proposed $842.72 distribution would have allowed unsecured creditors to recover 5.7% of their allowed claims.

[7] The Panel may review on appeal all earlier interlocutory orders that merge in the final appealed order. McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1104 (10th Cir. 2002).

-4-

trustee's request for compensation that exceeds the amount of money the trustee proposes to distribute to unsecured creditors constitutes one of those 'extraordinary circumstances' which commands a review of the fees for reasonableness." On that basis, the bankruptcy court found that extraordinary circumstances existed warranting scrutiny of the Application. To guide its determination of the reasonableness of the Trustee's requested compensation, the bankruptcy court ordered the Trustee to produce his time records for the case.

The Trustee submitted a declaration in which he explained that he did not keep detailed case-by-case time records for his work as a chapter 7 panel trustee. Instead of time records, he included a narrative of his services in the case. To provide justification for his request for compensation in lieu of specific time records for the case, the Trustee reported the total hours he worked as a chapter 7 trustee in 2014 and the compensation he received. Based on his calculations, including estimates of the time his legal assistant spent on activities that would qualify as billable, the Trustee estimated that the value of his chapter 7 trustee services in 2014 was $280,327, while in fact he received $184,838.51 for those services.

After receiving the Trustee's declaration, the bankruptcy court entered an order on the Final Report and Application ("Compensation Order"). In the Compensation Order, the bankruptcy court acknowledged that it had "no reservations about the Trustee's diligence and the performance of his duties." Nevertheless, the bankruptcy court found that there were extraordinary circumstances present justifying compensation in

-5-

an amount less than that requested. In support of this determination, the bankruptcy court noted that the Trustee had administered only one asset (the Dodge); that the Dodge had sold for less than expected; and that, as a result of the disappointing sale price, the Trustee's requested compensation exceeded - by almost a factor of three - the amount unsecured creditors would receive under the proposed distribution. With no time records to guide its determination of an appropriate level of compensation, the bankruptcy court turned to the United States Trustee's Handbook for Chapter 7 Trustees, which instructs trustees not to administer assets "primarily for the benefit of the trustee." Based on this principle, the bankruptcy court reasoned that "the unsecured creditors should receive at least as much" as the Trustee himself. The bankruptcy court awarded the Trustee $1,597.58, exactly half of the net proceeds from the sale of the Dodge.

The Trustee filed a timely appeal of the Compensation Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion in awarding compensation to the Trustee in an amount less than that requested in the Application.

## IV. STANDARD FOR REVIEW

We review for abuse of discretion the bankruptcy court's

award of fees under § 330(a). In re Salgado-Nava, 473 B.R. at 915. A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or unsupported by evidence in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011); United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## V. DISCUSSION

As stated above, we review the Compensation Order for abuse of discretion. Review for abuse of discretion requires us first "to determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Hinkson, 585 F.3d at 1262. If a bankruptcy court fails to identify or misapplies the correct rule of law, the inquiry ends there, and we "must conclude [the bankruptcy court] abused its discretion." Id. Accordingly, we must identify the applicable rule of law and determine whether the bankruptcy court applied it correctly.

### A. The "extraordinary circumstances" test

Section 326(a) provides a formula for determining the maximum compensation a trustee may receive in a chapter 7 case. In our decision in Salgado-Nava, we analyzed the interaction between this maximum compensation formula and the provision of § 330(a)(7) that the bankruptcy court must "treat [a trustee's] compensation as a commission, based on section 326." In re Salgado-Nava, 473 B.R. at 915-22. We held that a trustee's request for compensation should be presumed reasonable as long

-7-

as the amount requested does not exceed the statutory maximum calculated pursuant to § 326. "[A]bsent extraordinary circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review." Id. at 921. If the court has found that extraordinary circumstances are present, only then does it become appropriate to conduct a further inquiry to "determine whether there exists a rational relationship" between the compensation requested and the services rendered. Id.

B.   The bankruptcy court's extraordinary circumstances inquiry

To begin with, the bankruptcy court correctly identified the legal rule articulated in Salgado-Nava, acknowledging both the presumption of reasonableness and the "extraordinary circumstances" standard. In applying this standard, however, the bankruptcy court went on to state: "A chapter 7 trustee's request for compensation that exceeds the amount of money the trustee proposes to distribute to unsecured creditors constitutes one of those 'extraordinary circumstances' which commands a review of the fees for reasonableness." See In re Scoggins, 517 B.R. at 217.

It is clear from this statement that the bankruptcy court applied a per se rule in its extraordinary circumstances inquiry, which would require a finding of extraordinary circumstances in every case in which the trustee's requested compensation exceeds the proposed distribution to unsecured creditors. Thus, our task is to determine whether this per se rule is consistent with the applicable statutory provisions, as analyzed in Salgado-Nava. For the reasons that follow, we

-8-

conclude that it is not.

C.  Trustee compensation in excess of distribution to unsecured creditors is not per se an extraordinary circumstance

In Salgado-Nava, we left open the question of "what facts might qualify as extraordinary for purposes of activating the bankruptcy court's duty to determine the reasonableness of the § 326(a) commission rates."  In re Salgado-Nava, 473 B.R. at 922 n.16.  But we recognized "Congress's clearly expressed intent to fix trustee commission rates for the **vast majority** of cases."  Id. at 920 (emphasis added).  We noted that "we must assume that Congress already has approved fees set as commissions in § 326 as reasonable," and that payment of a commission without close scrutiny in the absence of extraordinary circumstances provided "a certain symmetry" when balanced against the modest $60 fee that trustees receive in no-asset cases.  Id. at 921-22.  The per se rule would disrupt this symmetry and would vitiate the congressional imperative that trustee compensation requests at or below the § 326 commission level be approved in "the vast majority of cases."[8]

This does not mean, of course, that the relationship between trustee compensation and distributions to unsecured creditors is irrelevant to a finding of extraordinary circumstances.  We do not adopt, as the Trustee urges us to do, a rule allowing chapter 7 trustees to receive the statutory commission in all cases unless the trustee's performance of his

---

[8] The Trustee notes, correctly, that the per se rule would require a finding of extraordinary circumstances in such cases even if all creditors are paid 100 cents on the dollar.

or her duties has been deficient.  But see Mohns, Inc. v. Lanser, 522 B.R. 594, 601-02 (E.D. Wis. 2015) (holding chapter 7 trustees are entitled to statutory commission in "nearly every case" and rejecting any consideration of disproportionateness of compensation).  We decline to give "extraordinary circumstances" the narrow and categorical definition the Trustee espouses.  We do hold, however, that trustee compensation exceeding distributions to unsecured creditors is not per se an extraordinary circumstance.

The fact that the Trustee's requested compensation exceeded the proposed distribution to unsecured creditors was not sufficient, standing alone, to establish extraordinary circumstances.  By holding that it was, the bankruptcy court applied an incorrect legal standard and thus abused its discretion.

## VI.  CONCLUSION

Based upon the foregoing, we conclude that the bankruptcy court abused its discretion by applying an incorrect legal standard in reviewing the Trustee's Application.  Accordingly, we VACATE the Hearing Order and the Compensation Order and REMAND the matter to the bankruptcy court for further proceedings consistent with this Opinion.

Concurrence begins on next page.

JURY, Bankruptcy Judge, Concurring:

I have no disagreement with the majority Opinion on this matter. Without question the adoption by the bankruptcy judge of a _per se_ rule that an extraordinary circumstance exists any time a trustee's requested compensation, as measured by § 326, exceeds the proposed distribution to unsecured creditors is inconsistent with our holding in <u>Salgado-Nava</u>. However, I would take our disagreement with the practices in the Eastern District of California somewhat further.

Although not the articulated basis for the bankruptcy judge's request for detailed time records in this case and his _per se_ determination that a hearing on the reasonableness of the requested fees was required, as the Trustee points out in his brief, the procedure followed by the judge was consistent with the recently adopted Local Bankruptcy Rule 2016-2[1] in the Eastern District of California, which states:

> Compensation of Chapter 7 Trustees
>
> (a) <u>Motion Procedure</u>. Every application for compensation of a Chapter 7 trustee in the categories set forth in paragraph (b) shall be presented by motion noticed and set for hearing pursuant to LBR 9014-1. Such motion shall be supported by time records and a narrative statement of the trustee's services.
>
> (b) <u>Categories</u>. The procedure specified in paragraph (a) shall be followed for requests that satisfy any of the following criteria:
>     (1) Fee requests seeking $10,000.00, or more;
>     (2) Cases in which the trustee seeks fees exceeding the amount remaining to pay unsecured

---

[1] New LBR 2016-2 was adopted in May 2015, after the bankruptcy judge here set the hearing and ruled on this case.

-1-

priority and general claims;
(3) Cases in which there is a "carve out" for the estate or a "short sale";
(4) Cases where the trustee has operated the business of the debtor; or
(5) Cases in which the court specifically orders such a fee application.

This rule was adopted in apparent response to In re Scoggins, 517 B.R. 206 (Bankr. E.D. Cal. 2014), a published opinion joined by all the Eastern District bankruptcy judges, who called for the new local rule in their concurrence. Id. at 227.

This rule and the reason it was enacted, as described in Scoggins, is inconsistent with our holding in Salgado-Nava. I submit that LBR 2016-2 stands on its head the presumption of reasonableness of the § 326 commission as called for in § 330(a)(7).

After bemoaning the fact that the U.S. Trustee and creditors offered little help to a reviewing bankruptcy court when it considers a chapter 7 trustee's fee application, Scoggins adopts a bright line requirement that detailed fee applications, supported by time records kept by the trustee, must be filed in a list of predetermined circumstances (which are articulated as #'s (b) 1-5 in LBR 2016-2) to "sort wheat from chaff" because the "categories suggest themselves." Id. at 222. Therefore, like the bankruptcy judge's decision in this case about when a per se extraordinary circumstance exists, the local rule requires detailed time records every time a trustee requests compensation which exceeds the dollars returned to unsecured creditors and in the other four predetermined categories of cases.

-2-

Such requirement flies in the face of <u>Salgado-Nava</u> and the presumption that the commission is reasonable. Our case suggests that **even when** a bankruptcy court makes an independent, discretionary determination that extraordinary circumstances exist, measuring the worth of the trustee's service by time billings is error:

> But bankruptcy courts still must keep in mind that tallying trustee time expended in performing services and multiplying that time by a reasonable hourly rate ordinarily is beyond the scope of a reasonableness inquiry involving commissions. Simply put, a bankruptcy court that diminishes a trustee's compensation from the statutorily-set rate errs if the only basis offered for this diminution is a lodestar analysis.

<u>Salgado-Nava</u>, 473 B.R. at 921.

This statement is preceded by a discussion of the impropriety of using a lodestar measure in a commission-based compensation calculation. <u>Id.</u> at 920. Yet, the new Eastern District rule does not just suggest that time records might be requested in some individually screened cases; instead it requires them in every case which falls within the predetermined list. Where did the presumption of reasonableness go?

I do not suggest that this rule mandates the judge to **only** consider a lodestar approach. However, by inserting it into the middle of the review process **every time**, it strongly suggests the time expended cannot be ignored, knocking the props out from under the presumption of reasonableness of the commission.

It is not my place to suggest that this new rule be stricken from the books. However, it is fundamentally inconsistent with the holding and reasoning of <u>Salgado-Nava</u> and teeters on unstable ground in light of that opinion.