FILED

MAY 7 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TBH19, LLC, a Delaware Limited<br>Liability Company,<br>               Debtor. | BAP No. CC-24-1152-FSG<br><br>Bk. No. 2:19-bk-23823-VZ |
| HAR-BD, LLC; HAR, LLC; HARVEY<br>BOOKSTEIN; HAR-RFF, LLC,<br>               Appellants,<br>v.<br>SAM S. LESLIE, Chapter 7 Trustee; LEA<br>ACCOUNTANCY, LLP; SHULMAN<br>BASTIAN FRIEDMAN & BUI LLP,<br>               Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Vincent Zurzolo, Bankruptcy Judge, Presiding

APPEARANCES

David Shemano of ShemanoLaw argued for appellants; Carolyn A. Dye
argued for appellees Sam S. Leslie and LEA Accountancy, LLP; Ryan
Daniel O'Dea of Shulman Bastian Friedman & Bui LLP argued for appellee
Shulman Bastian Friedman & Bui LLP

Before: FARIS, SPRAKER, and GAN, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Debtor TBH19, LLC's primary asset was a valuable but over-encumbered piece of real property. With the assistance of his professionals, the chapter 7[1] trustee sold the property after negotiating an agreement with the first-position lienholder that made $3.75 million available to pay administrative expenses and unsecured claims. The trustee and his professionals voluntarily agreed to reduce their fees such that unsecured creditors would receive a distribution of at least $700,000.

Unsecured creditors HAR-BD, LLC, HAR, LLC, Harvey Bookstein, and HAR-RFF, LLC (collectively, "HAR Parties") did not object to the sale or the carveout but challenged the final fee applications of the trustee, his accountant, and his legal counsel. They argued that the requested fees were unreasonable when compared to the distribution to unsecured creditors and that the unsecured creditors should receive at least half of the carveout. The bankruptcy court approved the fee applications, and the HAR Parties appealed.

We discern no abuse of discretion and AFFIRM. We publish to clarify that the fact that a chapter 7 trustee and the trustee's professionals are receiving more money than unsecured creditors does not necessarily justify a reduction of a chapter 7 trustee's statutory commission or the professionals' fees.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FACTS

### A. Prepetition events

TBH19 owned real property located in Beverly Hills, California ("Property"). DBD Credit Funding LLC ("DBD") held a first-position lien against the Property, and HAR-BD held a junior lien.

TBH19 defaulted on the DBD loan. Complicated, multiparty litigation ensued in state court.

### B. TBH19's bankruptcy filings

TBH19 filed a chapter 11 petition in late 2019. It scheduled the Property as its primary asset and represented that the Property was encumbered by secured liens totaling approximately $67 million.[2] It also scheduled unsecured claims totaling nearly $8 million. Creditors filed proofs of claim for much larger amounts.

TBH19 unsuccessfully listed the Property for sale at $125 million. It eventually took the Property off the market.

### C. Conversion to chapter 7, appointment of the Trustee, and employment of his professionals

In February 2021, the bankruptcy court converted TBH19's chapter 11 case to one under chapter 7. Sam Leslie was appointed chapter 7 trustee ("Trustee").

Shortly thereafter, the Trustee sought bankruptcy court approval to

---

[2] The chapter 7 trustee later contended that liens encumbering the Property were significantly larger.

3

employ LEA Accountancy, LLP ("LEA") as his accountant to assist "in the accounting matters and tax preparation aspects of the administration of this estate, to advise Trustee of any tax consequences derived from liquidation of estate assets and to assist in any other accounting or tax matters as may arise in connection with the administration of this estate." The Trustee disclosed that he is a partner at LEA.

The Trustee also sought to employ Shulman Bastian Friedman & Bui LLP ("SBFB") as legal counsel. He requested legal assistance in order to investigate the liens, prosecute and defend against various lawsuits, review the lease agreements for tenants residing at the Property, assist in the Trustee's management of the Property, resolve disputes over personal property, and collect monies owed to the estate.

No one objected to either application. The bankruptcy court approved LEA's and SBFB's employment.

**D.    Compromise with DBD and sale of the Property**

The Trustee listed the Property for sale at $89.75 million in April 2021. A month later, the Trustee, represented by SBFB, filed a motion to approve a settlement and compromise of DBD's claims against the estate. Under the agreement, the claims of DBD and other parties (totaling over $70 million) would be allowed in full and the Trustee would dismiss the estate's claims against DBD and related parties in the state court litigation. The Trustee proposed to file a motion to sell the Property. DBD agreed to make a credit bid in the amount of its claim and to carve out 6.25 percent of

4

the sale price for administrative fees and costs and distributions to unsecured creditors. The settlement agreement provided that "[t]he Trustee may enter into any subsequent agreements between the Estate and any of its professionals in the Bankruptcy Case to ensure that the Carveout results in a meaningful distribution to unsecured creditors."

HAR-BD filed a response to the Trustee's settlement motion. It did not object to the sale but questioned the amount of DBD's allowed claim.

After an initial hearing, the Trustee filed a supplement to the settlement motion and a modified settlement agreement. He also filed a joint stipulation resolving HAR-BD's concerns. As a part of the stipulation, HAR-BD withdrew its response to the settlement motion and agreed to the carveout.

On September 7, 2021, the bankruptcy court approved the settlement.

Approximately a month later, the Trustee reported that he had sold the Property for $63.1 million to a third party. This resulted in a carveout of $3.75 million.

E.    **Interim fee applications**

The Trustee, LEA, and SBFB filed applications for interim fees and expenses. The Trustee stated that he and his professionals settled almost all of the litigation against the estate and "made the impossible happen and created millions of dollars for the Estate, in an otherwise no asset case." The Trustee requested a total of $1,803,905.21 ($1,795,667.24 in fees and $8,237.97 in costs) pursuant to the statutory formula. LEA sought a total of

5

$246,230.80 ($245,779 in fees and $451.76 in costs). SBFB filed an application seeking a total of $1,027,704.64 ($1,012,355.50 in fees and $15,349.14 in costs).

HAR-BD responded that the bankruptcy court should defer approval of the fee applications until it had a better understanding of the Trustee's proposed use of the carveout funds and could evaluate the Trustee's actual work done on the case. It argued that if all the requested fees were allowed, none of the carveout funds would be available for distribution to unsecured creditors.

In his reply, the Trustee proposed that the court allow payment of fifty percent of the requested fees on an interim basis. Additionally, the Trustee and his professionals agreed to a $700,000 set-aside to guarantee some distribution to unsecured creditors.

Prior to the hearing, the Trustee reported that all of the relevant parties except for HAR-BD agreed to payment of fifty percent of the interim fees and all of the interim expenses sought by the Trustee, LEA, and SBFB. He reiterated that he and his professionals were "committed to having no less than $700,000.00 available for distribution to unsecured creditors, even if that means they will have to carve out funds from their fees that are ultimately approved by the Court."

At the hearing on the three interim fee applications, the HAR Parties acknowledged that they did not object to any fee request but argued that all of the fee applications were premature and that the court did not have

6

the necessary factual information to determine whether there would be a "meaningful distribution" to unsecured creditors.

The bankruptcy court granted the interim fee applications. It specifically noted that the case was a convoluted "mess" and stated, "But for the work of the Trustee and his professionals, there would be nothing in this case for anyone. I am convinced of that." The court found no "duplication of services between the Trustee and his professionals." The bankruptcy court awarded the requested fees in full on an interim basis and allowed payment of fifty percent.

## F.     Final fee applications

SBFB filed a final application for approval of fees and expenses. It sought allowance of $1,519,416.50 in fees and $22,587.59 in expenses (including the amounts allowed on an interim basis).

LEA filed an application for final fees and expenses. It sought total fees of $279,916 and total expenses of $878.55.

The Trustee filed his Final Report. He requested total compensation of $1,430,294.58 and total expenses of $8,602.42. He reported that he had realized gross receipts of $63,503,354.19 and that, accounting for administrative expenses, service fees, and payments to secured creditors and third parties, he had $2,255,598.61 available for distribution. He detailed his proposed distribution, which would result in exactly $700,000 to be divided among nineteen unsecured creditors; the HAR Parties would receive $501,848.63 on their allowed claims.

7

The HAR Parties objected to the Final Report and the final fee applications. They argued that the Trustee violated the "cardinal rule" against administering an asset where the proceeds would primarily benefit the Trustee and his professionals, rather than creditors. They said that unsecured creditors would receive a miniscule distribution.

The HAR Parties argued that the Trustee, LEA, and SBFB should not receive more than half of the carveout. They contended that, under *In re KVN Corp.*, 514 B.R. 1 (9th Cir. BAP 2014), the carveout must result in a "meaningful distribution to unsecured creditors." They urged the court to adopt the analysis offered in *In re Scoggins*, 517 B.R. 206 (Bankr. E.D. Cal. 2014), and not allow a trustee's fee to exceed the amount of funds that would be paid to unsecured creditors. They argued that "there is a rebuttable presumption that a trustee commission that exceeds the payout to unsecured creditors primarily benefits the trustee and does not leave enough for a meaningful distribution."

The HAR Parties argued that the compensation sought by the Trustee, LEA, and SBFB was excessive, given that the Trustee's administration of TBH19's estate "wrapped up" after six months. They implied that the Property sale and the remaining litigation were not particularly difficult.

With regard to SBFB's fees, the HAR Parties argued that the amount was not reasonable compensation for actual, necessary services because "[i]ncurring $1.5 million in fees to distribute $700,000 to creditors is not

8

reasonable." They complained about the various categories of SBFB's work, claiming that the work done and amount requested were not reasonable or necessary.

With regard to LEA's fees, the HAR Parties argued that the requested fees for services in a single-asset real estate case were facially unreasonable. They also complained that LEA's application for employment limited its services to tax-related matters, but "[i]n an apparent bait and switch," LEA did much more expansive work outside the original description of services. They contended that much of LEA's work was part of the Trustee's core duties.

Finally, the HAR Parties argued that the court should reduce the Trustee's statutory fees because there were "extraordinary circumstances" that rebutted the presumption of reasonableness. They again urged the court to adopt the analysis of *Scoggins* and hold that the disproportionate fee requests were extraordinary circumstances. They argued that "the reasonableness of the compensation should be measured by the amount of the carve-out for the estate, not the proceeds disbursed to the secured creditors."

At the hearing on the final fee applications, the bankruptcy court provided a detailed and comprehensive oral ruling.

First, the court refused to reconsider the carveout, holding that the order approving the carveout "has been litigated to finality" and "is the law of the case."

Second, the court distinguished the carveout from the $700,000 set-aside for unsecured creditors and declined to force the Trustee and his professionals to increase the voluntary set-aside.

The court stated that "[t]he test for allowing fees and expenses for the Chapter 7 trustee and his professionals is not whether it provides for a . . . 'meaningful distribution to unsecured creditors' . . . ." It found that, "but for the carveout that was negotiated by the trustee with the senior secured creditor, there would be no distribution at all."

Third, the court rejected the HAR Parties' assertion that this was a straightforward case, stating that "nothing could be farther from the truth." It recounted the "large amount of litigation over the simplest things." It noted the difficulties caused by the COVID-19 pandemic and by the "badly managed Chapter 11 bankruptcy case . . . ."

Fourth, the court addressed the individual fee applications. Starting with the Trustee's application, the bankruptcy court stated that the statutory commission is presumed reasonable, and the objecting party must offer evidence to overcome that presumption. It ruled that the HAR Parties failed to provide specific and convincing evidence that the commission fee should be reduced. It stated that it had presided over the bankruptcy case in its entirety, reviewed the case, and found that "the trustee carried out his duties appropriately and effectively with all the constraints that he faced and that the compensation requested is reasonable . . . ."

10

The HAR Parties argued that they did not have evidence to support their objection because the Trustee improperly refused to turn over documents that they had requested. But in response to the court's questions, counsel for the HAR Parties conceded that they did not take any action beyond a meet-and-confer to require the Trustee to comply with their discovery requests pursuant to the local bankruptcy rules, apparently because they thought it was not their burden to disprove the reasonableness of the fees.

Turning to SBFB's fee application, the bankruptcy court found that SBFB's services were necessary and appropriate, that SBFB did not duplicate the Trustee's duties, and that the amount of services and fees "were exacerbated by the grossly and overly litigious behavior of many parties in the case."

Finally, regarding LEA's fee application, the bankruptcy court relied on its earlier ruling on the interim fee application. It found that LEA did not perform any of the Trustee's functions.

The HAR Parties timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in approving the final fee applications for the Trustee, LEA, and SBFB.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's award of fees to a chapter 7 trustee and his professionals. *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911, 915 (9th Cir. BAP 2012).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

The HAR Parties contend that the fees awarded to the Trustee, LEA, and SBFB were not reasonable, because they bore no "rational relationship" to the work done and exceeded the unsecured creditors' share of the carveout. We see no abuse of discretion.

## A. The bankruptcy court did not abuse its discretion in approving the Trustee's final fee application.

Section 330 provides that the bankruptcy court may award a trustee and his professionals "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." § 330(a)(1)(A)-(B).

A chapter 7 trustee's compensation is a commission set by a statutory

formula: "In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." § 330(a)(7). The formula under § 326 is a sliding-scale percentage of the amount of money the trustee disburses, including payments on secured claims. § 326(a).

We have repeatedly stated that trustee compensation calculated under § 326(a) is presumptively reasonable and should be allowed absent extraordinary circumstances. *See Fear v. U.S. Tr. (In re Ruiz)*, 541 B.R. 892, 896 (9th Cir. BAP 2015); *In re Salgado-Nava*, 473 B.R. at 921.

In *Salgado-Nava*, the bankruptcy court reduced a chapter 7 trustee's commission because it found that the requested fees were unreasonable in light of the work performed. We reversed. We closely examined the language of § 330(a)(7) and concluded that "absent extraordinary circumstances, chapter 7 . . . trustee fees should be presumed reasonable if they are requested at the statutory rate. . . . **Thus, absent extraordinary circumstances, bankruptcy courts should approve chapter 7 . . . trustee fees without any significant additional review.**" 473 B.R. at 921 (emphasis added). "On the other hand, if extraordinary circumstances exist, . . . the bankruptcy court may be called upon in those cases to determine whether there exists a rational relationship between the amount of the commission and the type and level of services rendered." *Id.* In such a situation, "the bankruptcy court's examination of the relationship between the commission rate and the services rendered may, but need not necessarily

13

include, the § 330(a)(3) factors and a lodestar analysis." *Id.*

In other words, the analysis must start with the presumption that the trustee's fees pursuant to § 326 are reasonable. *Id.* ("[W]e must assume that Congress already has approved fees set as commissions in § 326 as reasonable for the duties it has set out for such trustees in § 704 and elsewhere in the Code."). Then, the bankruptcy court considers whether extraordinary circumstances exist. Only if the court finds that there were extraordinary circumstances must the court determine whether there was a "rational relationship" between the amount of the requested fees and the trustee's work on the case. *Id.*; *see In re Ruiz*, 541 B.R. at 896 ("If the court has found that extraordinary circumstances are present, only then does it become appropriate to conduct a further inquiry to 'determine whether there exists a rational relationship' between the compensation requested and the services rendered.").

We have never defined "extraordinary circumstances." In *Salgado-Nava*, we left "for another day the issue of what facts might qualify as extraordinary for purposes of activating the bankruptcy court's duty to determine the reasonableness of the § 326(a) commission rates." 473 B.R. at 922 n.16. We cited the U.S. Trustee's online compilation of Frequently Asked Questions for the proposition that extraordinary circumstances might exist "where the trustee's case administration falls below acceptable standards, or where it appears a trustee has delegated a substantial portion of his duties to an attorney or other professional." *Id.*

We also implied that a disproportion between the statutory commission and the trustee's services is not an "extraordinary circumstance." Under *Salgado-Nava*, the proportionality of the commission to the work performed only comes into play if extraordinary circumstances exist. *Id.* at 921. Therefore, such a disproportion cannot, by itself, be an extraordinary circumstance.

We have provided one example of a circumstance that is not extraordinary per se: the mere fact that the trustee's requested compensation exceeds the proposed distribution to unsecured creditors. *In re Ruiz*, 541 B.R. at 897 ("The fact that the Trustee's requested compensation exceeded the proposed distribution to unsecured creditors was not sufficient, standing alone, to establish extraordinary circumstances.").

### 1.  Extraordinary circumstances

The HAR Parties argue that the bankruptcy court erred in approving the Trustee's statutory commission, because the case presented extraordinary circumstances that overcame the presumption of reasonableness. They contend that the Trustee delegated most of his core trustee duties to LEA and SBFB; that the statutory commission is twice the amount of the distribution to unsecured creditors; that the commission is high compared to the Trustee's actual services; and that the Trustee sold fully encumbered property pursuant to a carveout agreement.

The HAR Parties rely heavily on *Scoggins*, where the bankruptcy court for the Eastern District of California extensively criticized the Panel's

15

decision in *Salgado-Nava* and provided a list of circumstances that would qualify as "extraordinary." Among other things, the *Scoggins* court held that "the question is whether trustee fees requested are disproportionate [compared to distribution to unsecured creditors]. If there is a material disproportion sufficient to rebut the presumption in favor of the § 330(a)(7) commission, then that will be an 'extraordinary' circumstance that opens the door to a downward departure." 517 B.R. at 224.

We are not bound by *Scoggins,* and we are bound by our own prior decisions. *See Ball v. Payco-Gen. Am. Credits, Inc. (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995) ("We will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings."). We have rejected a per se rule defining "extraordinary circumstances" based on the size of the chapter 7 trustee's compensation. *In re Ruiz*, 541 B.R. at 897 ("[T]rustee compensation exceeding distributions to unsecured creditors is not *per se* an extraordinary circumstance."). In *Ruiz*, we acknowledged "that the relationship between trustee compensation and distributions to unsecured creditors" was not "irrelevant to a finding of extraordinary circumstances[,]" but it cannot be the sole basis for departing from the statutory commission. *Id.* The bankruptcy court, which is undoubtedly more familiar with the facts of a given case than an appellate panel, must be free to determine what constitutes "extraordinary circumstances" on a case-by-case basis. *See Gold v. Robbins (In re Rowe)*, 750 F.3d 392, 397 (4th Cir. 2014) (stating that "the

16

bankruptcy courts will be required to make the determination of whether extraordinary circumstances exist in a Chapter 7 action on a case-by-case basis"); *see also In re Ruiz*, 541 B.R. at 898-99 (criticizing *Scoggins* for upending the presumption of reasonableness (Jury, J. concurring)). We thus decline to adopt any per se definition of "extraordinary circumstances."

The bankruptcy court concluded that this case did not present extraordinary circumstances warranting deviation from the statutory commission. The court recounted that the case was "a mess" and detailed the Trustee's various undertakings. It found that, without the Trustee's efforts, the case would likely have been a no-asset case and the unsecured creditors would have received nothing, as opposed to the guaranteed $700,000 set-aside. It reviewed the case in its entirety and found that the Trustee "carried out his duties appropriately and effectively with all the constraints that he faced . . . ." These findings were not clearly erroneous.

The bankruptcy court specifically rejected the HAR Parties' argument that the Trustee improperly delegated his duties to LEA or SBFB. Likewise, this finding was not clearly erroneous.

Similarly, the bankruptcy court found no fault in the Trustee's actual services. It repeatedly pointed out that, but for the Trustee's efforts, the case was "going quickly into oblivion" and would not have resulted in a distribution to unsecured creditors. It dismissed the HAR Parties' characterization of the case as a simple matter involving only the sale of a

single asset. Rather, the court enumerated the extensive litigation (both in bankruptcy court and in state court), the difficulties created by an obstinate chapter 11 debtor-in-possession, the unique challenges in selling the Property, and the roadblocks erected by the HAR Parties and others. It stated that the HAR Parties had failed to provide any evidence that the Trustee's work was unreasonable or subpar. Again, these findings were not clearly erroneous.

The HAR Parties also complain that the Trustees' sale of a fully-encumbered property pursuant to a carveout agreement is an extraordinary circumstance. They rely on *Scoggins* for the proposition that the fees are unreasonable if the carveout does not result in a "meaningful distribution" to unsecured creditors. *Scoggins* held that there exists a "rebuttable presumption that a § 330(a)(7) trustee 'commission' exceeding the proposed payout to unsecured priority and general claims 'primarily' benefits the trustee and does not leave enough for a 'meaningful' distribution. The court, without more explanation, would be justified in invoking § 330(a)(2) as an 'extraordinary' circumstance when determining a 'reasonable' fee." 517 B.R. at 223.

We disagree with any per se approach to a definition of extraordinary circumstances. The *Scoggins* tests are untethered from the language of the statute. Bankruptcy courts should be free to evaluate all relevant circumstances of a case, not just a laundry list of factors, when considering whether a case is extraordinary. Here, the bankruptcy court

properly examined the facts of this convoluted and over-contested case and found that the amount of the fees claimed from the carveout by the Trustee and his professionals was reasonable.

Further, the HAR Parties' argument amounts to a back-door attack on the carveout. As we held in *KVN Corp.*, the court must not approve a carveout unless it will result in a "meaningful distribution to unsecured creditors." 514 B.R. at 8. But as the bankruptcy court noted, it had already approved the sale and the carveout, and the HAR Parties consented to those orders.[3] The bankruptcy court correctly refused to relitigate the propriety of the carveout and to allow the HAR Parties to challenge it by objecting to the fee applications.

We therefore reaffirm our holding in *Ruiz* and decline the HAR Parties' invitation to define or enumerate any circumstances that are extraordinary per se. We leave it to the bankruptcy courts to exercise their sound discretion to determine whether extraordinary circumstances exist in a particular case.

### 2. Evidentiary support for the fee request

The HAR Parties argue that the Trustee failed to offer evidence to support his fee request, including proof of the actual services provided.

---

[3] The HAR Parties did not object to the Trustee's compromise of DBD's claim or the carveout, and the joint stipulation between HAR-BD and the Trustee explicitly approved of the carveout. Additionally, counsel for the HAR Parties conceded at oral argument that they did not object to the carveout and stated that "we consented to the Trustee administering the case in exchange for the carveout, that is correct."

The bankruptcy court did not err. We have held, and the HAR Parties appear to concede, that the Trustee has the burden to substantiate his billed services only if extraordinary circumstances are present. As we explained above, there were no extraordinary circumstances in this case that would rebut the presumption of reasonableness.[4]

The HAR Parties failed to offer the court any evidence to rebut the presumption of reasonableness. They admitted to the bankruptcy court that they did not comply with local bankruptcy rules to obtain discovery after the Trustee refused to provide the requested discovery.[5] *See* Local Bankr. R. 7026-1(c) (detailing the process to resolve a discovery dispute, including bringing a motion before the court). Their unsupported objection thus failed to overcome the presumption in favor of the Trustee.

---

[4] The HAR Parties appear to contend that their bare objection (without evidence) was sufficient to shift the burden to the Trustee to come forward with evidence to support his fee request. They cite *Smith v. UST-United States Trustee, Phoenix (In re Earle's Custom Wines, Inc.)*, BAP No. AZ-23-1050-LCF, 2023 WL 8776761, at *6 (9th Cir. BAP Dec. 19, 2023), *aff'd*, No. 24-174, 2024 WL 4589810 (9th Cir. Oct. 28, 2024), in which we stated, "We agree that a party objecting to the fees must establish that the fees are unreasonable. But we do not agree that the burden of the objecting party somehow relieves the professional from its burden to establish that its requested fees are reasonable in the first instance." But that case has nothing to do with a trustee's statutory commission; rather, it concerned attorneys' fees claimed by a trustee acting as his own attorney, in addition to the statutory commission.

[5] The HAR Parties claim on appeal that they raised the discovery dispute with the bankruptcy court in their objection to the Trustee's Final Report and did not waive the issue. But they only asked the court to deem the Trustee's silence as "an admission that the Trustee's actual services were minimal and have no rational relationship to the $1.8 million statutory commission." This request was insufficient to carry their burden to rebut the presumption of reasonableness in favor of the Trustee.

**B.    The bankruptcy court did not abuse its discretion in approving LEA's or SBFB's final fee applications.**

A different standard governs compensation for the Trustee's professionals. Section 330(a)(3) identifies factors that the court must consider:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The bankruptcy court may "award compensation that is less than the amount of compensation that is requested." § 330(a)(2). Additionally, the

bankruptcy court cannot award compensation for "unnecessary duplication of services" or "services that were not . . . reasonably likely to benefit the debtor's estate[ ] or . . . necessary to the administration of the case." § 330(a)(4)(A).

In an appeal concerning an award of a professional's fees, "it is necessary to determine whether such services were reasonable, actual, and necessary. § 330(a)(1)(A). A reviewing court also must determine whether the bankruptcy court considered whether the services rendered were 'reasonably likely to benefit the debtor's estate.' § 330(a)(4)(A)." *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 107 (9th Cir. BAP 2000). "The statute does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were 'reasonably likely' to benefit the estate at the time the services were rendered." *Id.* at 108.

The bankruptcy court utilized the correct legal standard for compensation of the Trustee's professionals. It stated that the services must be necessary and appropriate, not duplicative, and appropriate for the demands of the professional's task.

The HAR Parties repeatedly argue that the bankruptcy court erred in awarding fees to LEA and SBFB because the fees were more than twice the amount distributed to unsecured creditors. The court correctly rejected the objectors' arguments. A trustee's professionals are under no obligation to

22

guarantee any particular result for unsecured creditors. (By promising to reduce their fees to provide $700,000 for unsecured creditors, the Trustee and the professionals went above and beyond the call of duty.) The question is whether the services were reasonable and necessary at the time they were rendered. The court did not err in finding that they were.

The HAR Parties contend that the $1.8 million awarded to LEA and SBFB is "facially unreasonable and excessive" because the professionals knew how much the estate would receive through the carveout, so they should have performed services "commensurate with that expected amount." In other words, they argue that, because LEA and SBFB knew the estate would only receive $3.75 million, it was unreasonable to bill so much at the expense of unsecured creditors.[6] The HAR Parties assume that the professionals could have done less work and produced the same result. The record does not support this assumption. The bankruptcy court did not

---

[6] To the extent the HAR Parties argue that LEA and SBFB failed to exercise billing judgment, we also reject this argument. "Billing judgment" requires that an attorney must "consider the potential for recovery and balance the effort required against the results that might be achieved." *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991). The Ninth Circuit has stated that a professional should consider:

> (a) Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

> (b) To what extent will the estate suffer if the services are not rendered?

> (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Id.* at 959. The HAR Parties cursorily address only the first factor and fail to otherwise explain why the professionals exercised poor billing judgment.

23

clearly err when it found that, but for the professionals' work, unsecured creditors would have received nothing.

The HAR Parties point to eight tasks performed by SBFB that they claim were unreasonable. But they fail to explain why any of those tasks were improper. In hindsight, not all of SBFB's undertakings were successful, but the HAR Parties fail to establish that they were unnecessary or, at the time they occurred, not "reasonably likely to benefit the debtor's estate." § 330(a)(4)(A); *see In re Mednet*, 251 B.R. at 108.

As to LEA's fees, the HAR Parties contend that the Trustee was the primary beneficiary of the fees, since he is a partner at LEA. But the Trustee fully disclosed his relationship with LEA, and the HAR Parties did not object to LEA's employment application. It is too late to complain of their relationship.

The HAR Parties argue that LEA's scope of employment was limited to tax matters, but LEA eventually billed for a host of other tasks, including real estate analysis and litigation support activities. This assertion is simply false. LEA's employment was not so limited; the employment application sought LEA's assistance "in any other accounting or tax matter as may arise in connection with the administration of this estate" and to "perform any other financial analysis, investigation, general and/or forensic accounting services . . . which may be required by the Trustee to properly administer the estate . . . ." Moreover, the bankruptcy court found that all of these tasks were reasonable and necessary, given the complexity of the

case and the fact that the estate would not have recovered anything but for the Trustee and his professionals. It stated that it had reviewed the professionals' billing records and found the tasks reasonable with no duplication of trustee duties. These findings are not clearly erroneous.

## CONCLUSION

The bankruptcy court did not abuse its discretion when it approved the final fee applications. We AFFIRM.